JUAN ORTIZ PERICCHI, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN GERMÁN, recurrido.

No. 717.—*Sometido:* Abril 9, 1928.   *Resuelto:* Junio 15, 1928.

*Nazario & García Méndez,* abogados del recurrente; el registrador recurrido, compareció por escrito.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

El registrador de la propiedad se negó a inscribir un documento que se suponía ser una ampliación de una hipoteca

anterior, basada dicha prórroga en la teoría de que el nuevo convenio en realidad era una novación del contrato original.

■■ El artículo 144 de la Ley Hipotecaria y el 181 del Reglamento leen como sigue:

"Artículo 144. Todo hecho o convenio entre las partes que pueda modificar o destruir la eficacia de una obligación hipotecaria anterior, como el pago, la compensación, la espera, el pacto o promesa de no pedir, la novación del contrato primitivo y la transacción o compromiso no surtirá efecto contra tercero como no se haga constar en el Registro por medio de una inscripción nueva, de una cancelación total o parcial, o de una nota marginal, según los casos."

"Artículo 181. Conforme a lo dispuesto en el artículo 144 de la ley, cuando el hecho o convenio entre las partes produzca novación total o parcial del contrato inscrito, se extenderá una nueva inscripción y se cancelará la precedente. Cuando dé lugar a la resolución e ineficacia del mismo contrato, en todo o en parte, se extenderá una cancelación total o parcial; y cuando tenga por objeto, bien llevar a efecto un contrato inscrito pendiente de condiciones suspensivas, o bien hacer constar el pago de parte de una deuda hipotecaria, se extenderá una nota marginal."

Las partes comparecientes en la escritura ante nos son el deudor hipotecario original, a quien se une su esposa, y el acreedor hipotecario original. El deudor manifiesta que es dueño de cuatro fincas rústicas pequeñas, A, B, C y D, las que describe, haciendo las indicaciones usuales en cuanto a la procedencia y naturaleza del título; que por cierta escritura otorgada ante el notario Miguel A. García Méndez, en determinada fecha, inscrita en el Registro de la Propiedad de San Germán, al folio 106 del tomo 69 de ese pueblo, el referido deudor hipotecario, con el fin de garantizar el pago de un préstamo de dos mil dólares y sus correspondientes intereses, otorgó a favor del segundo compareciente, como tal acreedor hipotecario, una hipoteca voluntaria sobre una finca rústica compuesta de 63 cuerdas con 75 céntimos, sita en el barrio de Hoconuco Alto de San Germán; que el aludido préstamo de dos mil dólares se efectuó bajo una condición

que no se expresaba en la hipoteca original, al efecto de que la escritura últimamente mencionada debía ser inscrita como una segunda hipoteca; que la escritura de hipoteca No. 215, otorgada anteriormente ante el notario y en la fecha referidos, se hizo debido a que el deudor hipotecario aseguró que la finca en cuestión sólo estaba efecta a una hipoteca anterior a favor del Banco Federal de Préstamos Agrícolas; que al presentarse la escritura de la segunda hipoteca alegada, para ser inscrita en el registro de la propiedad, resultó ser no una segunda, sino una tercera hipoteca, con motivo de la inscripción anterior de otro gravamen, en adición al del Banco Federal de Préstamos Agrícolas; y que con el fin de dar una garantía buena y suficiente para el préstamo de dos mil dólares arriba mencionado, dicho deudor había convenido en ampliar la hipoteca otorgada ante el notario Miguel A. García Méndez en diciembre 26, 1927, "y por la presente hace extensiva dicha hipoteca a las fincas que se describen en esta escritura, debiendo continuar las mismas con dicho gravamen, ínterin la obligación haya sido totalmente cancelada de acuerdo con las cláusulas de la escritura referida."

El nuevo convenio contiene también las siguientes cláusulas:

"Octavo: Es deseo del señor Ramón Ramos López que la presente ampliación de hipoteca que se hace sobre las fincas descritas en esta escritura, quede sujeta a todas y cada una de las cláusulas estipuladas en la primitiva escritura de hipoteca.

"Noveno: Además de las cláusulas establecidas en la escritura de hipoteca, y las cuales rigen sobre la presente escritura, es convenido también entre las partes que si el deudor después de pagar uno o más plazos de los que se estipularon quisiese aplicar el mismo o los mismos a cubrir la responsabilidad asignada a una o más de las fincas gravadas, podrá hacerlo siempre que a juicio del acreedor quede bien y suficientemente garantizado en cuanto a capital, intereses y créditos adicionales el resto de la deuda a que responden las fincas restantes, según la distribución que de dicha responsabilidad hipotecaria se hace más adelante:

"Décimo: Para los efectos de la Ley Hipotecaria, los comparecientes ahora de común acuerdo reparten la responsabilidad hipote-

caria entre las fincas gravadas de la manera siguiente: la finca descrita en la escritura de hipoteca la cual es de sesenta y tres cuerdas setenta y cinco céntimos responderá de novecientos dólares de capital, y de las otras cantidades que representan intereses legales, intereses moratorios, costas y honorarios de abogado, caso de reclamación judicial; la finca descrita en la presente escritura con la letra A, responderá de doscientos dólares de capital; la descrita letra B, de cuatrocientos dólares de capital; la descrita letra C, de doscientos dólares de capital y la descrita letra D, de trescientos dólares de capital.''

Los artículos 1171 y 1172 del Código Civil, sección sexta, sub-título sobre novación, Capítulo IV, titulado ''De la extinción de las obligaciones,'' libro IV, título I, leen como sigue:

''Artículo 1171. Las obligaciones pueden modificarse:

''1. Variando su objeto o sus condiciones principales.

''2. Substituyendo la persona del deudor.

''3. Subrogando a un tercero en los derechos del acreedor.

''Artículo 1172. Para que una obligación quede extinguida por otra que la substituya, es preciso que así se declare terminantemente, o que la antigua y la nueva sean de todo punto incompatibles.''

Los artículos 144 de la Ley Hipotecaria y 181 del Reglamento, en que se funda el registrador, pueden ser interpretados conjuntamente y a la luz del espíritu y fin de la Ley Hipotecaria y su Reglamento. Ese espíritu y fin están claramente indicados en las disposiciones contenidas en el artículo 144, al efecto de que todo hecho o convenio de las clases allí enumeradas ''no producirá efecto contra tercero,'' como no se haga constar en el registro.

El caso de *Ortiz* v. *El Registrador,* 16 D.P.R. 720, no es aplicable. Los autos de dicho caso no contienen copia del documento que en el mismo se discute. De los alegatos se desprende claramente que allí no hubo cuestión de novación *vel non*. Esto se desprende razonablemente también del texto inglés de la opinión. Cualquier duda que allí pudiera haber deberá surgir del uso de la palabra ''ampliación,'' en la traducción española como equivalente de la palabra ''increase'' empleada en la opinión original en inglés.

Los letrados del recurrente en el presente caso nos aseguran que en el caso últimamente citado se efectuó un nuevo préstamo después de haberse inscrito la hipoteca anterior, y que la novación en cuestión fué una tentativa para incluir el montante del nuevo préstamo como parte de la hipoteca principal ya existente, que debía ser garantizado por el gravamen anterior sobre el inmueble ya hipotecado, sin pretenderse aumentar la garantía ya dada por tal deuda original. Esta aserción es enteramente consistente con los alegatos en el caso anterior y con la opinión de esta corte publicada en 16 P.R.R. 684, donde se dijo:

"The deed purported to be an increase and novation of a mortgage executed on July 27, 1907."

Resolver que un deudor hipotecario puede aumentar a su voluntad una primera hipoteca ya inscrita sin dar garantía adicional por tal aumento y sin tener en cuenta los derechos de acreedores hipotecarios subsiguientes, quienes con posterioridad pueden haber inscrito sus gravámenes, sería evidentemente contrario tanto a la letra como al espíritu de la Ley Hipotecaria y su Reglamento. Incidentalmente la práctica de prestar dinero en segundas o subsiguientes hipotecas para garantizar el préstamo, muy pronto estaría fuera de uso. Pero ni la nota recurrida en el presente caso ni el alegato del registrador en apoyo de la misma ofrecen explicación o sugestión de alguna manera concebible en que una reducción de la suma garantizada por una hipoteca inscrita o por cualquier otro gravamen sobre determinado inmueble podría perjudicar los posteriores poseedores de derechos reales u otros terceros para cuya protección fué aprobada la Ley Hipotecaria y en cuyo beneficio fueron establecidos los registros de la propiedad.

El documento que ahora tenemos ante nuestra consideración no es una novación del contrato original, ya que no ha habido cambio del objeto o de las condiciones principales, ni substitución de la persona del deudor, ni subrogación de un

tercero en los derechos del acreedor. Mucho menos hay prueba alguna de la intención de extinguir la obligación original con la substitución de una nueva, ni ninguna incompatibilidad aparente "de todo punto."

En el presente caso no hubo modificación alguna del convenio original, fuera de la garantía adicional dada y la redistribución de la responsabilidad con el fin de cumplir los requisitos del artículo 119 de la Ley Hipotecaria. El montante de la deuda no fué ni aumentado ni reducido. En lo que se refiere a los asientos originales y a los derechos inscritos de terceros, el único efecto de tal modificación es la cancelación parcial y el pago del gravamen que pesaba sobre la propiedad cubierta por la primera hipoteca.

Si se hubiese efectuado un pago parcial de $1,100 en vez de ampliar el gravamen original con el fin de incluir otros inmuebles en garantía de dicha cantidad, relevando hasta ese límite el inmueble primeramente hipotecado, entonces no hubiera habido duda alguna respecto al procedimiento adecuado que se debía seguir. Sin embargo, para poder hacer cualquier cambio necesario en el asiento original, el resultado es exactamente el mismo.

En tales casos el fin primordial de un nuevo asiento o de una nota marginal, según sea el caso, no es indicar la situación actual de la obligación personal garantizada por el contrato adicional. El fin es informar al público en general que el gravamen hipotecario sobre cierto inmueble ha sido reducido hasta el límite que indica determinada cantidad de dinero. A un tercero que interese hacer un negocio directamente con esa finca no le interesaría en absoluto si la suma en cuestión fué deducida de la deuda original o si fué garantizada por la ampliación del gravamen original a otro u otros inmuebles. A cualquier persona que negocie con el acreedor hipotecario original le bastaría saber que la responsabilidad del inmueble originalmente hipotecado ha sido reducida y que

el montante de tal reducción ha sido garantizado, substituyéndolo con otros inmuebles.

Siendo el resultado idéntico (en su relación y efecto sobre la hipoteca original que motivó el asiento que será afectado por la ampliación del gravamen original y por la responsabilidad disminuida de la finca ya gravada) no había razón satisfactoria por la cual el resultado no debe indicarse, al igual que cuando se efectúa el pago, mediante nota marginal. Pero sea ello como fuere, la modificación en el presente caso, a lo sumo, equivale a la "resolución o ineficacia" parcial del contrato original. De ahí .se desprende que el hacer un asiento de una cancelación parcial sería tanto permisible como correcto por las disposiciones expresas del artículo 181 del Reglamento.

Desde luego, el registrador estaba muy en lo cierto al negarse a inscribir el documento en cuestión como un gravamen sobre dos de las fincas dadas como garantía adicional, ninguna de las cuales consta inscrita a nombre del deudor hipotecario ni a nombre de persona alguna. *En cuanto a este extremo la nota debe ser confirmada. En todos ios demás extremos debe ser revocada.*