PURA BLANCO VDA. DE SERRA, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE BAYAMÓN, recurrido.

Núm. 1253.—*Sometido:* Noviembre 7, 1950. *Resuelto:* Junio 15, 1950.

*Córdova & González* y *Alberto Picó Santiago*, abogados de la recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

El día 2 de abril de 1946 Pura Blanco vda. de Serra, por escritura pública número 8 otorgada ante el notario Guillermo E. González, vendió a Antonia Serra una finca urbana radicada en Bayamón, conteniendo dicha escritura la siguiente cláusula:

"Se lleva a efecto esta compraventa por el ajustado y convenido precio de NUEVE MIL DOSCIENTOS CINCUENTA DÓLARES ($9,250), cantidad que confiesa la vendedora haber recibido de manos de la compradora, a su entera satisfacción, con anterioridad a este acto y por la cual le otorga la más formal y eficaz carta de pago."

Dicha compraventa fué inscrita en el Registro de la Propiedad de Bayamón al folio 124 vuelto, tomo 120 de Bayamón, finca número 1977 duplicado, inscripción 10.

El 29 de marzo de 1949 las mismas otorgantes comparecieron ante el mismo notario y otorgaron, bajo el número 1 de su protocolo de ese año, escritura titulada "Acta Aclaratoria y Carta de Pago", en la que, luego de hacer mención de la indicada compraventa, se consignó en la segunda de sus cláusulas lo siguiente:

"En la mencionada escritura de compraventa se hizo constar que el precio de la misma lo era la suma de Nueve mil Doscientos Cincuenta Dólares ($9,250) y al hacer constar dicho precio las partes comparecientes sufrieron una equivocación porque el precio ajustado y convenido de dicha compraventa lo fué la suma de CUATRO MIL TRESCIENTOS SETENTA DÓLARES ($4,370) y la equivocación al hacer constar dicho precio se explica en la forma siguiente:

"El acuerdo de las partes fué la venta del solar descrito por el mismo precio en que fué tasado para los fines de la imposición de contribución de herencia por el Tesorero de Puerto Rico, después del fallecimiento del esposo de la compareciente, Doña Pura Blanco Viuda de Serra, el Sr. Juan Primitivo Serra Defontaine, que fué el mismo precio que se fijó a dicho solar en la escritura de disolución de sociedad de gananciales y distribución y partición de bienes, otorgada ante este notario, bajo el número cinco

en febrero veinte y seis de mil novecientos cuarenta y seis. La descripción del mencionado solar en la escritura de disolución de sociedad de gananciales y partición de bienes aparece en las páginas siete y ocho de dicha escritura, que corresponden a las páginas cuarenta y siete y cuarenta y ocho del protocolo de este notario para el año mil novecientos cuarenta y seis, y al copiarse el precio del mencionado solar en la mencionada escritura de disolución de sociedad de gananciales y partición de bienes se copió la cifra de Nueve Mil Doscientos Cincuenta Dólares ($9,250) que aparece en la página siete del original de dicha escritura que corresponde a la página cuarenta y siete del protocolo de este notario para el año mil novecientos cuarenta y seis, en vez de copiarse la cifra que correspondía a dicho solar y que aparece después de la descripción del mismo y de la relación de su título en la página nueve de la mencionada escritura que corresponde al folio cuarenta y nueve del protocolo de este notario para el año mil novecientos cuarenta y seis.

"Al otorgarse la escritura número ocho de compraventa de fecha dos de abril de mil novecientos cuarenta y seis, se hizo constar que el precio de dicha compraventa había sido pagado con el fin de que la propiedad vendida no quedase gravada en forma alguna, pero lo cierto es que el mencionado preció no fué pagado ni antes ni al otorgarse la mencionada escritura y que el convenio de las partes fué que dicho precio fuera pagado por la compradora sin intereses en cualquier fecha antes del treinta de junio de mil novecientos cuarenta y nueve y el error incurrido en la expresión del precio de la compraventa fué descubierto por las partes al disponerse la compradora, Doña Antonia Serra, a pagar dicho precio dándose entonces cuenta las partes de la equivocación sufrida."

Seguidamente, y en la cláusula tercera, expusieron:

"Las partes ahora aclaran y corrigen la cláusula segunda de la escritura de compraventa otorgada ante este notario con el número ocho, en dos de abril de mil novecientos cuarenta y seis, al efecto de que el precio ajustado y convenido para la compraventa llevada a efecto lo fué la suma de CUATRO MIL TRESCIENTOS SETENTA ($4,370) DÓLARES, la cual suma ha sido pagada por la compradora a la vendedora, a satisfacción de ésta, mediante la entrega por la compradora a la vendedora de un cheque librado contra la Sucursal de Bayamón de Puerto Rico del Banco Popular de Puerto Rico que lleva el número diez y seis, fechado

marzo veinte y ocho de mil novecientos cuarenta y nueve, que la vendedora acepta y recibe en pago y satisfacción total del precio de la compraventa mencionada y el cual cheque copiado literalmente lee así." (Aparece transcrito en la escritura.)

Presentada al Registro para su inscripción, el Registrador recurrido devolvió la misma con la siguiente nota:

"Devuelto el presente documento sin practicar operación alguna, toda vez que en la inscripción del título que se pretende corregir ahora, no se ha cometido error alguno de los que disponen los artículos 256 al 262 de la Ley Hipotecaria; y además porque el Registrador que suscribe carece de competencia para alterar en una inscripción el precio convenido y pagado entre los contratantes en el documento que así lo motivó. Bayamón a 11 de abril de 1949. J. A. Surís Agraít—Registrador."

Contra esta nota se interpuso el presente recurso.

■ Si bien la nota recurrida lee en su comienzo "Devuelto el presente documento sin practicar operación alguna . . . ", dicha nota constituye realmente una denegatoria de la inscripción solicitada, ya que expresa las razones que para ello tuvo el Registrador. Éste ha hecho, en efecto, una calificación del documento, actuación ésta que es revisable mediante recurso gubernativo. *Autoridad de Tierras* v. *Registrador*, 65 D.P.R. 513, 520–22; *Pueblo* v. *Registrador*, 64 D.P.R. 130, 134; *Guánica Centrale* v. *El Registrador*, 23 D.P.R. 734, 735.

■ Sostiene la recurrente que la nota del Registrador está predicada erróneamente en los artículos 256 a 262([1]) de la Ley Hipotecaria, que tratan de la rectificación de errores en las inscripciones, tanto materiales como de concepto, ya que en este caso no se trata de esta clase de errores y sí de una rectificación, por las propias partes contratantes, de una de las cláusulas contenidas en el contrato original.

El Registrador por su parte insiste en que la escritura sobre acta aclaratoria pretendía señalarle error en su actua-

---

([1]) Deben ser los artículos 254 a 264 de la Ley Hipotecaria.

ción y que la rectificación que se intenta no está autorizada por los artículos 254 a 264 de la Ley Hipotecaria y 290 a 312 de su Reglamento, ya que no hay *equivocación*, ni error *material* ni error *de concepto*.

En verdad, no se trata en este caso de rectificar un error cometido *por* el Registrador. Se trata de rectificar un error en el asiento, proveniente de un error consignado en el documento inscrito, por los propios otorgantes—y por ende en el Registro—y de la inscripción de este documento. El asiento fué bien extendido por el Registrador.

Los artículos 254 a 264 de la Ley Hipotecaria y los concordantes de su Reglamento hablan de la rectificación de errores en el Registro, bien materiales o de concepto, por el Registrador bajo su propia responsabilidad en algunos casos, o con la conformidad de los interesados o por providencia judicial en otros. Comentando estos artículos dice Morell en su obra Legislación Hipotecaria, tomo 4, pág. 662:

"La base para la extensión de los asientos en el Registro es el título o documento presentado para inscribir o anotar. El título puede estar equivocado en alguna circunstancia de más o menos interés o en algún concepto, y es claro que en tal caso esa equivocación pasará también al Registro y éste no reflejará la realidad. Sin embargo, mientras la inscripción esté conforme con el título, se hallará fielmente extendida. El Registrador en tal caso no comete error alguno y no puede exigírsele rectificación. Así se reconoce en la Resolución de 10 de enero de 1900 y en la sentencia de 7 de junio de 1881. *Los interesados, con independencia del Registrador, pueden otorgar un nuevo documento en el que expongan la verdad de los hechos, la equivocación padecida por ellos o por el Notario o funcionario que intervino, o el verdadero alcance de lo convenido o la verdadera extensión del derecho que se concedió.* Y si los interesados no se ponen de acuerdo, puede cualquiera de ellos acudir a la Autoridad judicial, para que por ésta se decida lo procedente sobre la pretendida rectificación del título." (Bastardillas nuestras.)

Bajo la doctrina anteriormente expuesta, procede la inscripción del documento en este caso, en el cual se expuso por los propios otorgantes bajo su responsabilidad, la verdad de los

hechos, la equivocación en que se incurrió y el verdadero alcance de lo convenido. Desde luego, una inscripción rectificada no surte efecto sino desde la fecha en que se inscriba el documento en que conste la rectificación. 1 Galindo y Escosura, Legislación Hipotecaria 643, 644.

*Procede revocar la nota recurrida y ordenar la inscripción del documento a que la misma se refiere.*