THE PUERTO RICO INDUSTRIAL DEVELOPMENT CO. y THE PUERTO RICO CEMENT CORPORATION, recurrentes, *v.* EL REGISTRADOR DE LA PROPIEDAD DE BAYAMÓN, recurrido.

Número 1293.

*Sometido:* 4 de marzo de 1953. *Resuelto:* 21 de abril de 1953.

*Carlos A. Vallecillo* y *F. J. Pérez Almiroty,* abogados de los recurrentes; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

Interesando la inscripción de una hipoteca constituída a su favor sobre ocho fincas y otras propiedades de la Puerto Rico Cement Corporation, en garantía del pago de un pagaré hipotecario suscrito por ésta por la suma de $6,006,255.39, de sus intereses al 4 por ciento anual en la forma en él estipulada, de la suma de $25,000 para costas, gastos y honorarios de abogado en caso de reclamación judicial y de otra de $20,000 para cubrir intereses de mora al tipo legal, The Puerto Rico Industrial Development Company presentó en el Registro de la Propiedad de Bayamón la escritura número 4 otorgada en San Juan el 14 de septiembre de 1951 ante el notario Carlos A. Vallecillo. El Registrador recurrido devolvió dicho documento "sin practicar operación alguna" por el fundamento de que el mismo devengaba derechos, según el arancel, por la suma de $2,864.50 y no por la de $564.50 que fué la que se consignó por tal concepto, sin que el presentante hubiere depositado oportunamente la diferencia después de haber sido requerido para ello."

La recurrente acude ante nos en solicitud de que se ordene la inscripción del documento, sosteniendo que consignó los derechos que requiere el arancel para dicha operación. Veamos.

La "Ley Asignando Sueldos a los Registradores de la Propiedad, y para otros fines" de 10 de marzo de 1904 (pág. 144), según quedó enmendada en su sección 22—que establece el arancel de los derechos que se han de pagar por las operaciones en los registros de la propiedad—por la Ley núm. 102 de 12 mayo de 1943 (pág. 283), dispuso en el Número Cinco de dicho arancel, que "Por cada inscripción o anotación y consiguientes notas marginales que no estén compren-

didas en los números precedentes se cobrarán las cantidades fijas que se establecen en la escala siguiente:

| | Inscripciones o anotaciones extensas | Inscripciones o anotaciones concisas |
|---|---|---|
| "Por cada finca o derecho cuyo valor no llegue a $100 | $0.50 | $0.25 |
| "De más de $100 a $200 | 1.00 | 0.50 |
| "De más de $200 a $500 | 2.00 | 1.00 |
| "De más de $25,000 a $30,000 | 25.00 | 22.00 |
| "De más de $900,000 a $1,000,000 | 300.00 | 275.00 |
| "De más de $1,000,000 | 500.00 | 450.00" |

No hay controversia en cuanto al hecho de que se trata aquí de una inscripción extensa sujeta al Número Cinco del arancel. Tampoco la hay en cuanto a que la inscripción del gravamen sobre siete de las ocho fincas hipotecadas devenga derechos por la suma de $64.50.

La controversia aquí gira alrededor de los derechos que devenga la inscripción de la hipoteca antes referida en la parte que afecta a una sola de las fincas: la designada en la escritura como finca "A", la cual responde de la suma de $5,926,255.39 de principal, del crédito de $20,000 para intereses en caso de mora y de los $25,000 para costas, gastos y honorarios de abogado en caso de reclamación judicial. El Registrador sostiene que bajo la escala anterior cada millón de dólares del crédito hipotecario a ser inscrito en cuanto a dicha finca devenga $500 de derechos, o sea $2,500 por los primeros cinco millones, y $300 por la fracción del millón restante, en total $2,800.

Por su parte, la recurrente sostiene que siendo el valor del crédito hipotecario a ser inscrito, en cuanto a la finca "A", uno "de más de $1,000,000" según la anterior escala, su inscripción devenga derechos por la suma de $500 solamente.

Tiene razón la recurrente. El Registrador no puede requerir derechos en exceso de aquéllos exigidos por la ley. La escala establecida por el Número Cinco del arancel, contrario

a lo que ocurre con la establecida por el Número Tres del mismo, (¹) no provee que se cobre derecho alguno adicional por los valores progresivos sobre el millón de dólares. Al contrario: fija en la suma de $500 los derechos que devengará cualquier inscripción o anotación extensa cuando el valor de la finca o derecho a inscribirse o anotarse pase del millón de dólares, sin que contenga disposición alguna para graduar, en forma progresiva de ahí en adelante, los valores que excedan de esa cantidad, ni para fijar sobre ellos cantidad adicional alguna en concepto de derechos.

La ley es clara, precisa y no deja margen para interpretaciones. Como dijera el Juez Córdova Dávila en *P. R. Am. Sugar Refinery, Inc.* v. *Domenech, Tes.*, 46 D.P.R. 602, 609: "La letra de la ley es tan clara que hiere la retina con la intensidad de su luz." El criterio personal del Registrador no puede sustituir el propósito manifiesto del legislador. Cuando el valor de la finca o derecho a inscribirse o anotarse exceda de un millón de dólares, no importa hasta qué cantidad llegue el exceso, se cobrará la suma fijada para tal caso: $500 por una inscripción o anotación extensa y $450 por una sencilla, y nada más. Siendo la de autos una inscripción extensa, los derechos a pagarse, en cuanto a la inscripción del crédito hipotecario que afecta la finca "A", son $500.

█ La recurrente también se queja de que el Registrador le devolvió el documento "sin practicar operación alguna", en contravención de la ley, ya que ella tenía derecho a una ano-

---

(¹) El Número Tres de dicho arancel dispone, entre otras cosas: "Por todas las operaciones, sea cualquiera su forma, que a instancia de parte deban verificarse para la cancelación o redención de hipotecas, censos o derechos reales, incluyendo el asiento de presentación y notas marginales, se devengará por cada finca:

"*(a)* Si la finca o derecho vale menos de quinientos dólares... $2.00

"*(b)* De quinientos a mil dólares......................... 2.50

"*(m)* De más de veinte mil a treinta mil dólares............ $13.00

"*(n) Por cada mil dólares adicionales o fracción de mil dólares se cobrarán $0.50 adicionales.*" (Bastardillas nuestras.)

tación por ciento veinte días. El Registrador, en cuanto a ésto, contesta en su alegato que "En este caso implícitamente la Ley le concede a los recurrentes el término de 120 días sin que el Registrador tenga que expresarlo en su nota, suspendiendo las operaciones contenidas en un documento que se trae al Registro faltándole la cantidad de derechos correspondientes al arancel." (²) No es ésta una contestación adecuada. La Ley Asignando Sueldos a los Registradores de la Propiedad, etc., según quedó enmendada por la Ley núm. 39 de 23 de abril de 1928 (pág. 233), dispone en su sección 24 lo siguiente:

"El importe de los derechos que el arancel señala por los diversos servicios, se depositarán en los sellos de rentas internas correspondientes, en la forma que esta Ley dispone, cuando se presente cualquier documento para ser inscrito o anotado o cuando se solicite cualquier certificación, y el registrador fijará y cancelará los correspondientes a los servicios que hubieren sido prestados y devolverá sin inutilizarlos al interesado los sellos que en su caso no fueren necesarios usar. *Si resultare que al irse a practicar la operación en el registro, se requiriese por el registrador mayor cantidad de derechos que la depositada en sellos por el interesado, el registrador requerirá al interesado para que deposite la diferencia y si éste no hiciere el depósito dentro del término que duren los efectos del asiento de presentación, el registrador suspenderá la inscripción o anotación por medio de nota fundada que extenderá al margen del asiento de presentación. Esta nota durará ciento veinte días y de ella podrá recurrirse para ante el Tribunal Supremo utilizando el recurso establecido en la Ley sobre recursos contra las resoluciones de los registradores de la propiedad, aprobada en marzo 1 de 1902. Si la nota se revoca, el registrador procederá a inscribir o anotar el documento y si se confirma, el interesado para conseguir la inscripción o anotación deberá depositar la diferencia en sellos exigida por el registrador."* (Bastardillas nuestras.)

---

(²) El Registrador, a renglón seguido, hace constar: "Por ese motivo no creemos que se perjudique la parte de los recurrentes cuando no se ha hecho la calificación definitiva del título en este Registro, no teniendo otros motivos para rechazar el título que los de faltarle los derechos correspondientes al Número 5 del arancel que antes citamos."

Como puede verse de la anterior disposición de ley, la misma impone al Registrador la obligación de suspender la inscripción o anotación—en los casos en que los derechos acompañados al título presentado sean insuficiente y no deposite el interesado la diferencia a su requerimiento—"por medio *de nota fundada que extenderá al margen* del asiento de presentación," la cual nota durará 120 días, pudiendo recurrirse de ella para ante este Tribunal. Ese mandato de la ley debe cumplirse por el Registrador estrictamente y sin excusa. Los fundamentos de la suspensión de la inscripción o anotación deben aparecer en la nota que extienda al margen del asiento de presentación. Y tal disposición de la ley no autoriza al Registrador, cuando pretende actuar bajo su autoridad, a devolver el título "sin practicar operación alguna," pues si bien la operación solicitada no se lleva a cabo porque la ley requiere que se suspenda, también la ley requiere una operación: la nota marginal al asiento de presentación, contentiva de los fundamentos de la suspensión. Y tal nota fundada debe aparecer del Registro.

*Por los fundamentos expuestos, se revoca la nota del Registrador recurrido y se ordena la inscripción del documento que motiva el presente recurso.*