La Corporación Colón & Compañía, Inc., recurrente, *v.* El Registrador de la Propiedad de Ponce, recurrido.

*Número:* G-62-6 *Resuelto:* 11 de abril de 1963

*Domínguez* y *Domínguez,* abogados de la recurrente; el Registrador recurrido compareció por escrito.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señor Blanco Lugo y Ramírez Bages.

El Juez Asociado Señor Blanco Lugo emitió la opinión del Tribunal.

Por escritura Núm. 11 de fecha 15 de enero de 1957 otorgada ante el notario don Luis Domínguez Rovira, la corporación Colón & Co., Inc., reconoció haber recibido en calidad de préstamo de doña Felisa Recio Collazo viuda de Baquero la suma de quince mil dólares, y constituyó hipoteca en garantía de su pago por el término de cinco años. En dicho instrumento además se postergó un crédito hipotecario inscrito anteriormente a los fines de que la hipoteca constituida a favor de la señora Baquero se inscribiera con rango registral preferente. Presentada en el Registro de la Propiedad de Ponce, la escritura Núm. 11 fue debidamente inscrita como primer gravamen hipotecario mediante la extensión del asiento correspondiente.

En 3 de febrero de 1962 la corporación deudora y la acreedora hipotecaria comparecieron nuevamente ante el mencionado notario y otorgaron una escritura de prórroga de la referida hipoteca, conviniendo el 15 de enero de 1967 como la fecha del vencimiento del crédito, "en iguales condiciones que cuando se constituyó." También se repitió la operación de la postergación del otro crédito a que hemos aludido. Presentada para inscripción el recurrido devolvió

la escritura sin practicar operación alguna, consignando una nota que copiada literalmente dice así:

"Devuelto este documento y suspendida la inscripción del mismo por no haber depositado el presentante $21.00 faltantes para completar los $23.00 de derechos de inscripción que devenga el documento a pesar del requerimiento que se le hiciera por carta de 26 de febrero del corriente año, extendiéndose en su lugar nota de suspensión por 120 días al margen del asiento 205 del tomo 402 del Diario según lo dispone la ley #39 de 23 de abril de 1928 . . . ."

Se interpuso recurso gubernativo. (¹)

1. Antes de entrar a considerar los méritos del presente recurso, conviene recordar que los registradores deben siempre informar con cierta amplitud sobre los motivos de sus notas en el texto de los mismos, y no en sus alegatos. *Grillo* v. *Registrador*, 62 D.P.R. 679 (1943); *Valentín* v. *Registrador*, 61 D.P.R. 218 (1942); *Julio Godreau Co.* v. *Registrador*, 23 D.P.R. 65 (1915); *Machuca e Hijos & Co.* v. *Registrador*, 22 D.P.R. 755 (1915); *Alvarez* v. *Registrador*, 21 D.P.R. 487 (1914).

2. La tesis sustentada por el Registrador recurrido en su alegato es que la variación de una circunstancia tan principal en un contrato de préstamo como la fecha o plazo de la devolución engendra una novación parcial de las que alude el Art. 181 del Reglamento Hipotecario, 30 L.P.R.A. sec. 1115, (²) y por consiguiente, debe hacerse constar por medio

---

(¹) *Industrial Development Co.* v. *Registrador*, 74 D.P.R. 651 (1953); *Autoridad de Fuentes Fluviales* v. *Registrador*, 71 D.P.R. 847 (1950); *Blanco* v. *Registrador*, 71 D.P.R. 570 (1950); *Autoridad de Tierras* v. *Registrador*, 65 D.P.R. 513 (1945).

(²) El citado Art. 181 del Reglamento Hipotecario dispone que:

"Conforme a lo dispuesto en el artículo 144 de la ley, cuando el hecho o convenio entre las partes produzca novación total o parcial del contrato inscrito, se extenderá una nueva inscripción y se cancelará la precedente. Cuando dé lugar a la resolución e ineficacia del mismo contrato, en todo o en parte, se extenderá una cancelación total o parcial; y cuando tenga por objeto, bien llevar a efecto un contrato inscrito pendiente de condiciones suspensivas, o bien hacer constar el pago de parte de una deuda hipotecaria, se extenderá una nota marginal."

de una inscripción, y no meramente mediante nota marginal. Este Art. 181 implementa el Art. 144 de la Ley, 30 L.P.R.A. sec. 257.(3) Se aplicaría entonces el número 5 del arancel registral y no el número cuatro. Sec. 20 de la Ley Núm. 3 de 2 de septiembre de 1955, 30 L.P.R.A. (Supl. 1961) sec. 1767.

¿Constituye la extensión del plazo para el pago de un crédito hipotecario un supuesto de novación objetiva parcial para los efectos de los artículos citados? Comentando el Art. 144 de la Ley Hipotecaria española, Galindo y Escosura dicen:

"El art. 111 del Regl. [corresponde con el Art. 181 de Puerto Rico] habla de novación total o parcial; y como las leyes no consignan esa distinción, sospechamos que por novación parcial quiere significar aquellas variaciones del contrato que tocan y afectan, aunque sea incidentalmente, a lo principal de la obligación, modificándola de alguna manera, como ampliando la hipoteca, alargando el plazo de la deuda o acortándolo, u obligándose a no pedirla, o convirtiéndola de pura en condicional, o de gratuita en onerosa. En todos estos casos habrá de hacerse una nueva inscripción; y en verdad que no variando las circunstancias de la anterior, no vemos la necesidad de ese asiento con todas las que exige el art. 9.°, cuando por una sencilla nota puesta al margen para hacer constar la modificación, se conseguiría el objeto y se evitarían gastos inútiles a los interesados." (4)

Fundándose en que la incompatibilidad entre la antigua y la nueva obligación es la nota característica de la operación novatoria, Castán indica que "En cuanto al plazo, la doctrina científica suele entender que la concesión de un término al

(3) El Art. 144 de la Ley Hipotecaria lee como sigue:

"Todo hecho o convenio entre las partes que pueda modificar o destruir la eficacia de una obligación hipotecaria anterior, como el pago, la compensación, la espera, el pacto o promesa de no pedir, la novación del contrato primitivo y la transacción o compromiso, no surtirá efecto contra tercero como no se haga constar en el Registro por medio de una inscripción nueva, de una cancelación total o parcial, o de una nota marginal según los casos."

(4) *Comentarios a la Legislación Hipotecaria de España y Ultramar*, 1896, tomo III, pág. 377.

deudor o la renuncia por el deudor del que inicialmente se le había otorgado, no implica, en principio, novación, pues el término, dice Planiol, sólo afecta a la *ejecución*, de la obligación, no a su constitución," ([5]) y llama la atención a que la introducción de modificaciones accidentales en una obligación preexistente no implica que ésta se extinga por novación, aunque advierte que la relatividad del límite que separa lo principal de lo accidental da gran inseguridad a esta doctrina, por lo que señala que a los fines de determinar si existe o no una verdadera novación deben considerarse 1) la naturaleza de la cláusula modificada; 2) la voluntad de las partes; y, 3) la significación económica de la modificación. Puig Brutau([6]) también se refiere al carácter accidental de las modificaciones introducidas para resolver sobre la existencia de una novación, y examina la cuestión aplicándole el criterio de que la prórroga para el cumplimiento de una obligación consentida por el acreedor no debe interpretarse más que como una concesión de éste que no debe privarle de otros derechos y facultades que tiene en virtud de la obligación primitiva. El Profesor Antonio Cammarota de la Universidad Nacional de Buenos Aires es más enfático aún: "La prórroga en el pago del capital adeudado, al no afectar un elemento esencial de la obligación, nunca importa novación. Esta dilación en la exigibilidad del préstamo motivada por el hecho de recibir el acreedor los intereses respectivos después de vencida la obligación, no altera la conclusión predicha . . . ." ([7]) Y finalmente, Roca Sastre expresa que "En verdad este art. 240 del Reglamento no es un dechado de perfecciones." ([8])

---

([5]) *Derecho Civil Español, Común y Foral* (8a. ed. 1954), tomo 3.°, pág. 316.

([6]) *Fundamentos de Derecho Civil,* 1959, tomo I, vol. II, págs. 400–402.

([7]) *Tratado de Derecho Hipotecario,* Compañía Argentina de Editores (1942), págs. 387–388.

([8]) *Derecho Hipotecario* (5a. ed., 1954), tomo IV, pág. 921.

84

■ La jurisprudencia española se inclina a declarar que la simple alteración o prórroga del plazo no constituye novación. Así, la sentencia de 26 de abril de 1955 (Jurisp. Civil, 3a. Serie, tomo 50, pág. 823) se pronuncia en el sentido de que "no existe novación cuando, subsistiendo la obligación primitiva, se otorgan simples facilidades para el cumplimiento de la obligación mediante prórrogas y pagos fraccionados." Igual criterio informan las sentencias de 16 de mayo de 1946 (Jurisp. Civil, 2a. Serie, tomo 10, pág. 850), 26 de febrero de 1944 (Jurisp. Civil, 2a. Serie, tomo 5, pág. 511), 30 de diciembre de 1935 (Jurisp. Civil, tomo 221, pág. 754) y 22 de junio de 1917 (Jurisp. Civil, tomo 140, pág. 766).([9])

■ Ratificando el principio básico de que la novación, ya se refiera a los sujetos o al objeto de la obligación, no se presume, y que para que exista, precisa una declaración terminante de los contratantes de su intención de novar o que resulta una completa incompatibilidad entre ambas obligaciones, adoptamos en *Caribe Lumber Corp.* v. *Marrero*, 78 D.P.R. 868 (1955), el criterio expuesto por la mayoría de la doctrina y por la jurisprudencia española, y dijimos que la modificación de una obligación primitiva en cuanto a circunstancias meramente accidentales no produce efecto extintivo de la obligación en ausencia de tal declaración terminante de las partes. Específicamente resolvimos que la modificación de una obligación primitiva en cuanto al término de vencimiento y al pacto sobre pago de intereses no altera o varía su esencia y, por tanto, no produce el efecto extintivo de la novación. En el mismo sentido, *G. Llinás & Co., S. en C.* v. *Sucn. Mariani*, 47 D.P.R. 574 (1934); *Costa &*

---

([9]) En la sentencia de 11 de enero de 1929 se dice que el limitar el plazo de duración del contrato cuando antes era ilimitado, integra un cambio en la obligación. Castán, *op. cit.*, pág. 317, la distingue de las citadas en el texto señalando la ausencia de contradicción, fundándose en que en los supuestos de prórroga del plazo aparece menos clara la *incompatibilidad* entre la antigua y la nueva obligación.

*Santini, Sucr., Inc.* v. *Suliveres,* 44 D.P.R. 739 (1933) ; *Carminely* v. *Truyol,* 42 D.P.R. 959 (1931) ; *Armstrong* v. *Flores Colón,* 35 D.P.R. 339 (1926) ; *Argueso* v. *Rossner,* 8 D.P.R. 245 (1905). Véanse además, en cuanto a novación objetiva, *León Parra* v. *Gerardino,* 58 D.P.R. 489 (1941) (un contrato de arrendamiento prorrogado por tácita reconducción no queda novado aunque el arrendador efectúe luego rebajas del canon) ; *Banco de P. R., Liquidador, etc.* v. *Arguinzoni,* 53 D.P.R. 167 (1938) ; *Bonet* v. *Hernáiz Rozas,* 49 D.P.R. 101 (1935) ; *Iglesias* v. *Jefferson Standard Life Ins. Co.,* 45 D.P.R. 711 (1933) ; *Ortiz Pericchi* v. *Registrador,* 38 D.P.R. 387 (1928).

 Del documento presentado para inscripción aparece claramente que se conserva la identidad completa del contenido de la obligación y de sus elementos personales y que, lejos de revelar "animus novandi," se ratifica el deseo de no alterar o cambiar sus condiciones principales. No se trata, pues, de un supuesto de novación parcial que requiera una inscripción. Es inevitable la conclusión de que el ingreso de la escritura de prórroga en los libros del Registro ha de hacerse mediante nota marginal. Como indica Roca Sastre, *op. cit.,* págs. 394 y 395, la nota marginal es un asiento que cumple cualquiera de los siguientes propósitos: facilitar la mecánica de la oficina del Registro, *consignar hechos o circunstancias que modifican derechos inscritos,* o hacer las veces de otros asientos. Los términos principales del contrato ya aparecen inscritos en el Registro: importe de la obligación, intereses y créditos accesorios convenidos, identidad del inmueble hipotecado, y otras condiciones. En verdad que sostener la posición del Registrador equivaldría a llegar a la conclusión indeseable de que se requeriría la cancelación de derechos cuando menos en dos ocasiones sucesivas respecto al mismo contrato de préstamo. El financiamiento de nuestra creciente economía industrial requiere una solución com-

patible con el anunciado propósito público de estimular la economía y abrir nuevos horizontes al desarrollo del país.

*Se devolverá la copia certificada al Registrador de la Propiedad de Ponce para que proceda a extender la nota marginal correspondiente.*