Gilberto Gierbolini, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El 2 de noviembre de 2000, Ikaro Productions Inc. (en adelante Ikaro) presentó Petición de Certiorari y nos solicitó la revocación de la Resolución emitida el 28 de septiembre de 2000, notificada el 6 de octubre de 2000 y depositada en el correo el 10 de octubre de 2000, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante dicha resolución, el tribunal de instancia decretó la validez de cierto contrato suscrito entre Ikaro y Video Media Corporation (en adelante Video Media). Por los fundamentos que expondremos, EXPEDIMOS el Auto de Certiorari solicitado y REVOCAMOS la Resolución recurrida.
I
El 28 de julio de 1998, Video Media presentó ante el tribunal de Instancia una acción sobre incumplimiento de contrato y daños y peijuicios contra Ikaro. En la misma, Video Media alegó que el 8 de enero de 1998 las partes suscribieron un contrato titulado "Contrato Sobre Uso y Explotación de Grabación para Exhibirse en Televisión y/o Cable Televisión y/o Pague de Cable por Ver y/o Videos," donde Ikaro cedió en representación *672 del Sr. Enrique Martin Morales t/c/c Ricky Martin los derechos de comercialización sobre el video Ricky Martin Europa: España Cantó, a cambio de ciertas regalías. Video Media añadió que luego de suscribir el contrato y sin mediar aviso formal alguno, Ikaro informó que había recibido un comunicado de Sony Music International (en adelante Sony) advirtiéndole que el video Ricky Martin Europa: España Cantó, no podía ser objeto de comercialización, ya que Sony tenía los derechos exclusivos sobre el mismo. Video Media solicitó al tribunal de instancia que ordenara a Ikaro a indemnizar a Video Media una suma no menor de $5,000,000 por concepto de los daños ocasionados como resultado del incumplimiento de sus obligaciones contractuales al ceder unos derechos que no tenía.
El 21 de agosto de 1998, Ikaro compareció al tribunal de instancia mediante el escrito de contestación a demanda. En ella, Ikaro aceptó la existencia del documento suscrito el 8 de enero de 1998, pero alegó que el mismo nunca entró en vigor. Luego de varios incidentes procesales, el 19 de mayo de 1999, Ikaro presentó "Moción Solicitando Orden" donde requirió como remedio provisional que el tribunal ordenara a Video Media la devolución del "master" del video Ricky Martin Europa: España Cantó, para evitar que fuera utilizado. El 1 de junio de 1999, Video Media se opuso a dicha solicitud y alegó que dicho video es el objeto del contrato suscrito por ellos y su principal pieza de evidencia.
Ikaro presentó su réplica el 18 de junio de 1999 y sostuvo que el hecho de que el video sea una pieza de evidencia no justifica que no sea entregado a Ikaro, ya que ésta no niega su existencia, ni que lo entregó a Video Media. Ikaro añadió que Video Media presentó una acción por incumplimiento de contrato y daños y perjuicios y no solicitó el cumplimiento específico del contrato como remedio. Ikaro alegó que se trata de una obligación de cumplimiento imposible para la que Video Media no había realizado pago alguno.
En la vista programada para el 31 de agosto de 1999, el tribunal de instancia declaró No Ha Lugar la solicitud de Ikaro para que Video Media entregara el"Master" del video Ricky Martin Europa: España Cantó, y a su vez, ordenó a Video Media abstenerse provisionalmente de sacar copia o distribuir en forma alguna el video. El tribunal concedió a Video Media el término de 10 días para que sometiera un memorando de derecho para fundamentar las razones por las cuales entendía que la solicitud de orden o remedio de Ikaro era improcedente en derecho y atentaba contra los mejores intereses de ambas partes.
En cumplimiento de dicha orden, con fecha de 10 de septiembre de 1999, Video Media presentó memorando de derecho ante el tribunal de instancia donde indicó que el remedio solicitado por Ikaro era improcedente en derecho porque ésta no satisfizo los requisitos configurados en la Regla 56 de Procedimiento Civil, 32 L.P.R.A. Apéndice III, Regla 56, sobre Remedios Provisionales. El 1 de octubre de 1999, Ikaro replicó y señaló que no le asiste razón a Video Media, dado el hecho que ella era la dueña del video y, además, la Regla 56, supra, confería al tribunal flexibilidad para emitir las medidas que estime necesarias para asegurar la efectividad de la sentencia.
Posteriormente, el tribunal de instancia solicitó a Ikaro que sometiera bajo sello los documentos o contratos de donde surgía la prohibición de mercadear el video Ricky Martin Europa: España Cantó. Ikaro sometió los documentos en sobre lacrado. 
Luego de analizar los documentos ante su consideración, el 28 de septiembre de 2000, notificada el 6 de octubre de 2000 y depositada en el correo el 10 de octubre de 2000, el tribunal de instancia emitió resolución y decretó la validez del contrato suscrito entre Ikaro y Video Media el 8 de enero de 1998. El tribunal de instancia determinó que de la evidencia sometida por Ikaro no surgía que el contrato estableciera prestaciones que Ikaro no pudiera pactar. También determinó que en dicha evidencia no existía prohibición de mercadear el video Ricky Martin Europa: España Cantó, y . que desde el momento en que suscribieron el contrato, las partes estaban obligadas a cumplir según lo acordaron. Por lo tanto, el tribunal de instancia no encontró razón alguna para que no fuese mercadeado el video Ricky Martin Europa: España Cantó.
*673 No conforme, el 2 de noviembre de 2000, Ikaro compareció ante este Tribunal mediante petición de certiorari y nos solicitó la revocación de la resolución emitida por el tribunal de instancia. Ikaro alegó la comisión de tres errores. En primer lugar, que el tribunal de instancia erró al resolver sumariamente la validez del contrato entre Ikaro y Video Media sin que las partes hubiesen sometido el asunto ante su consideración y a pesar de que existía controversia sustancial de hechos. Segundo, que el tribunal de instancia erró al decretar la validez de dicho contrato que había sido novado extintivamente por las partes. Por último, que el tribunal de instancia erró al no decretar la nulidad del contrato y permitir la comercialización del video Ricky Martin Europa: España Cantó.
El 13 de noviembre de 2000, Video Media presentó "Memorando en Oposición a Petición de Certiorari." Finalmente, el 22 de noviembre de 2000, Ikaro presentó "Moción Solicitando Remedio" donde alegó que Video Media sometió en su memorando, como apéndice número uno, una carta con su anejo que no forma parte de los documentos que tuvo ante sí el tribunal de instancia al resolver la resolución recurrida, ello en violación a la Regla 34 E (1) (e) (2) del Reglamento del Tribunal de Circuito de Apelaciones que prohíbe incluir en el apéndice copias de documentos que no formen parte del expediente original del tribunal de instancia, así como la Regla 74 (b) del mismo reglamento. Ikaro solicitó de este Tribunal que ordenara el desglose del apéndice primero de la oposición de Video Media o que permitiera a Ikaro presentar la correspondencia generada por el Ledo. Ricardo Carrillo que establece claramente su defensa de novación.
II
Los contratos son negocios jurídicos bilaterales que a su vez constituyen una de las fuentes de las obligaciones. Amador Parrilla v. Concilio Iglesia Universal de Jesucristo, 2000 J.T.S. 60, a la página 877; Santiago v. A.C.C.A., 119 D.P.R. 711, 718 (1987).
El contrato nace desde que las partes consienten en obligarse a dar alguna cosa o prestar algún servicio. Artículo 1206 del Código Civil, 31 L.P.R.A. Sección 3371; Unisys Puerto Rico Inc. v. Ramallo Brothers, 128 D.P.R. 842, 852 (1991). Desde entonces el contrato obliga, siempre y cuando en él concurran las condiciones esenciales para su validez. Artículo 1230 del Código Civil, 31 L.P.R.A. Sección 3451; Cervecería Corona v. Commonwealth Ins. Co., 115 D.P.R. 345, 351 (1984); Capó Caballero v. Ramos, 83 D.P.R. 650, 676-677 (1961).
Los elementos esenciales para su validez son: (1) el consentimiento de los contratantes, (2) el objeto cierto que sea materia del contrato, y (3) la causa de la obligación que se establezca. Artículo 1213 del Código Civil, 31 L.P.R.A. Sección 3391; Quiñones López v. Manzano Pozas, 141 D.P.R. 139, 154 (1996).
Por otra parte, el Artículo 1054 del Código Civil, 31 L.P.R.A. Sección 3018, sujeta a aquéllos que de alguna manera contravengan sus obligaciones a la indemnización de los daños y perjuicios causados. Todo incumplimiento contractual dará lugar a un resarcimiento.
En el caso de las obligaciones recíprocas, cuando una de las partes no cumple con lo pactado, la otra tiene derecho a "escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución, aún después de haber optado por el cumplimiento, cuando éste resultare imposible," Artículo 1077 del Código Civil, 31 L.P.R.A. Sección 3052; Master Concrete Corp. v. Fraya, S.E., 2000 J.T.S. 192, a las páginas 455-456.
Esta condición resolutoria tácita opera ex propio vigore. Por lo tanto, si uno de los contratantes incumple, el otro puede darlo por resuelto sin necesidad de que un tribunal así lo declare. Flores v. Municipio de Caguas, 114 D.P.R. 521, 529 (1983); Sucn. Escalera v. Barreto, 81 D.P.R. 596, 607 (1959); Federal Land Bank v. Echeandía, 48 D.P.R. 320, 323 (1935). Esto es lo que en latín conocemos como "exceptio non adimpleti contractus" que constituye una defensa oponible a la parte que habiendo incurrido en incumplimiento, exige, no obstante, el cumplimiento del contrato. Constructora Bauzá v. García López, 129 D.P.R. 579, 593 (1991).
*674 Ahora bien, no todo incumplimiento de una obligación recíproca conlleva efecto resolutorio. Para ello, es menester que la obligación incumplida sea una esencial o que su cumplimiento constituya el motivo del contrato para la otra parte. Neca Mortage Corporation v. A & W Developers S.E., 137 D.P.R. 860, 875 (1995); Ramírez v. Club Cala de Palmas, 123 D.P.R. 339, 347-348 (1989).
No obstante, las obligaciones pueden ser modificadas: (1) variando su objeto o sus condiciones principales; (2) sustituyendo la persona del deudor, y (3) subrogando a un tercero en los derechos del acreedor. Artículo 1157 del Código Civil de Puerto Rico, 31 L.P.R.A. Sección 3241. En nuestra jurisdicción existen dos tipos de novación: la que causa la extinción de la obligación, denominada extintiva y la modificativa, que no extingue la obligación anterior, sino que la modifica. Teachers Annuity v. Soc. de Gananciales, 115 D.P.R. 277, 285-286 (1984). El Artículo 1158 del citado Código Civil, 31 L.P.R.A. Sección 3242, establece que para "...que una obligación quede extinguida por otra que la sustituya, es preciso que así se declare terminantemente, o que la antigua y la nueva sean de todo punto incompatibles. Colón & Cía., Inc. v. Registrador, 88 D.P.R. 79, 84 (1963). La incompatibilidad existe cuando hay cambios esenciales en la obligación, como el objeto o el precio del contrato. Miranda Soto v. Mena Eró, 109 D.P.R. 473, 479 (1980). La novación, por ser uno de los medios de extinguir las obligaciones, nunca puede ser presumida, sino que ha de ser acreditada sin género alguno de duda. Warner Lambert v. Tribunal Superior, 101 D.P.R. 378, 389-391 (1973).
III
A la luz de lo antes expresado, y conforme los hechos específicos del caso ante nuestra consideración, surge que se cometieron los errores señalados.
Por estar íntimamente relacionados, discutiremos conjuntamente los últimos dos errores señalados. Estos errores versan sobre la validez del contrato suscrito por las partes el 8 de enero de 1998.
El tribunal de instancia decretó la validez del contrato suscrito entre Ikaro y Video Media luego de realizar un examen de otros contratos suscritos en fecha anterior. No ha sido cuestionada la validez de dichos contratos anteriores.
Mediante el contrato de 11 de octubre de 1996 suscrito entre Sony y Ricmar Inc., Sony adquirió los derechos exclusivos sobre el artista Ricky Martin. Particularmente, la cláusula 8.01 (a) otorga a Sony el derecho al nombre, imagen y material biográfico relativos a Ricky Martin. La cláusula 2.01 del contrato obliga al artista a cantar con el fin de hacer grabaciones para Sony. La cláusula 14.24 del contrato indica que el término "grabación" incluye grabaciones de sonido acompañadas o no de una imagen visual en cualquier formato para cualquier forma de explotación comercial. Además, en la definición de "récord" contenida en la cláusula 14.26, incluye todas las formas de reproducciones, trasmisiones o comunicaciones conocidas o que en el futuro se conozcan, manufacturadas, distribuidas, transmitidas o comunicadas principalmente para uso casero. Según la cláusula 13.1 (c), el artista no puede filmar o participar en cualquier evento en que sea necesario su desempeño como cantante sin la autorización expresa de Sony. Asimismo, la cláusula 12.2 (a) concede a Sony permiso irrevocable bajo marca de fábrica para manufacturar y distribuir grabaciones audiovisuales.
De la lectura e interpretación del contrato suscrito entre Sony y Ricmar Inc. el 11 de octubre de 1996, surge que dicho contrato concedió una amplia gama de derechos exclusivos a Sony sobre el artista Ricky Martin. La cláusula 13.6 dispone que cualquier incumplimiento a los términos del contrato causaría daños irreparables a Sony y le concede el derecho a obtener un interdicto.
El contrato suscrito entre Sony y Ricmar Inc. fue suscrito en fecha anterior al suscrito entre Ikaro y Video Media. El primero establece que los derechos sobre el nombre y la imagen del artista pertenecen a Sony. Para ejercitar algún acto relacionado con los mismos, es necesario autorización expresa de Sony y, a esos efectos, la prohibición de Sony fue terminante.
La Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Apéndice HI, Regla 16.1, dispone:

*675
"Las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada."

Una parte indispensable es aquélla que podría ver afectados sus derechos e intereses al momento de dictarse sentencia o resolución por no encontrarse presente en el litigio. Vencedor Development Corp. v. Autoridad de Carreteras de Puerto Rico, 136 D.P.R. 456, 460 (1994); Rodríguez Rodríguez v. Moreno Rodríguez, 135 D.P.R. 623, 627 (1994); Torres v. Alcalde Municipio de Carolina, 135 D.P.R. 108, 121 (1994); Cepeda Torres v. García Ortiz, 132 D.P.R. 698, 704 (1993); Fuentes v. Tribunal de Distrito, 73 D.P.R. 959, 981 (1952).
El propósito de esta regla es proteger a las personas ausentes de los posibles efectos perjudiciales de la resolución del caso y evitar la multiplicidad de pleito. Metropolitan Marble Corp. v. Pichardo, 98 J.T.S. 65, a la página 981.
La controversia planteada principalmente versa sobre la comercialización de un video sobre el cuál Sony alegadamente posee derechos exclusivos. Cualquier determinación que el tribunal tome en tomo a esta controversia, podría afectar o lesionar los derechos adquiridos de Sony mediante contrato. El contrato por ésta suscrito, ha sido objeto de discusión dentro de la controversia. Sony, como beneficiaría del mismo, no ha tenido la oportunidad de presentar su posición, ni de defender sus derechos. Aunque no existe relación contractual entre Video Media y Sony, existe la posibilidad de que suija una decisión adversa a los intereses de Sony, quien no es parte en este pleito.
Finalmente, el tribunal de instancia cometió el primer señalamiento de error. Nuestro sistema jurídico es de naturaleza rogado, por lo que el tribunal no podía emitir resolución sobre un asunto no traído ante su consideración. Véase, Villanueva v. Hernández Class, 128 D.P.R. 618, 638 nota al calce 8 (1991).
IV
En virtud de los fundamentos anteriormente expuestos, EXPEDIMOS el Auto de Certiorari solicitado, REVOCAMOS la Resolución recurrida y DEVOLVEMOS el caso al Tribunal de Primera Instancia para ulteriores procedimientos.
Lo acordó y manda el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General
ESCOLIO 2002 DTA 9
1. El sobre contiene los siguientes documentos:

“(a) Contrato de grabaciones entre Sony y Ricky Martin Enterprises Inc. (Ricmar Inc.) de 11 de octubre de 1996.

(b) Contrato de acuerdo financiero entre Ricmar Inc. y Sony de 11 de octubre de 1996.

(e) Modificación a contrato de grabación entre Ricmar Inc. y Sony de 12 de mayo de 1999.

(d) Acuerdo prestatario y garantía entre Ricmar Inc. y Sony de 12 de mayo de 1999. ”