BANCO DE PUERTO RICO, como liquidador del BANCO COMERCIAL DE PUERTO RICO, demandante y apelado, *v.* JUAN BAUTISTA ARGUINZONI, GUILLERMO COLÓN y MATEO VÁZQUEZ, demandados y apelantes.

Núm. 7243.—*Sometido:* Enero 19, 1938. *Resuelto:* Mayo 9, 1938.

*M. Guzmán Texidor,* abogado de los apelantes; *C. Domínguez Rubio,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Inició este pleito el Banco de Puerto Rico como liquidador del Banco Comercial de Puerto Rico en cobro de un pagaré por mil treinta y tres dólares treinta y cuatro centavos, firmado por Juan Bautista Arguinzoni, Guillermo Colón y Mateo Vázquez como deudores solidarios. Muerto el último, se demandó a su viuda y a sus diez hijos, ocho de los cuales eran menores de edad.

Los demandados en su contestación aceptaron la existencia del pagaré pero pidieron que se desestimara la demanda por haber quedado extinguida la deuda por novación y por pago.

Fué el pleito a juicio. Aceptado el hecho del fallecimiento de Mateo Vázquez y el de que los demandados de apellido Vázquez y María Ocaña eran sus herederos, el Banco de Puerto Rico probó que estaba autorizado para negociar en la Isla y era el liquidador judicial del Banco Comercial de Puerto Rico. Luego ofreció en evidencia el pagaré en cuestión firmado por Arguinzoni, Colón y Vázquez en septiembre 5, 1931, para vencer en octubre 31 siguiente, y la declaración de Diez de Andino a los efectos de demostrar que el pagaré pasó al Banco de Puerto Rico al hacerse cargo de

la liquidación del Comercial, que el Banco hizo gestiones privadas de cobro sin resultado y que el montante de la deuda era $1,033.34 de principal y $289.34 de intereses al doce por ciento anual hasta febrero 28, 1934.

. Por la parte demandada declaró Guillermo Colón, uno de los firmantes del pagaré. Dijo que éste representaba el resto de una deuda que estaba garantizada con un bono hipotecario de Juan B. Arguinzoni que el Banco ejecutó; que no satisfizo directamente el importe del pagaré, que tampoco la Sucesión de Mateo Vázquez lo había satisfecho, pero que lo pagó Juan B. Arguinzoni con el bono que ejecutó el Banco. Y por evidencia documental demostró dicha parte:

Que en noviembre 25, 1930, Juan B. Arguinzoni suscribió un pagaré a la orden del portador por $12,350 y $500 adicionales para costas y lo garantizó con hipotecas que constituyó sobre las siguientes fincas rústicas situadas en Cayey: una de once y media cuerdas, otra de cuatro y media, otra de seis, otra de seis y media, otra de una, otra de diez, otra de veinticinco, y otra de diez, y sobre una casa ubicada en Cayey, dando en prenda dicho pagaré en marzo 19, 1932, al Banco Comercial de Puerto Rico en garantía de otros diez pagarés suscritos por él y otras personas ascendentes en junto a $8,057.89, siendo uno de ellos el que se intenta cobrar en este caso o sea el firmado por Arguinzoni, Colón y Vázquez por $1,033.34;

Que en marzo 1, 1934, en Guayama, día señalado para la venta en pública subasta por ante notario del pagaré dado en prenda, el notario público Celestino Domínguez Rubio ante quien se llevó a efecto la subasta, otorgó una escritura haciendo constar que la venta fué anunciada en la forma que se especifica, que Arguinzoni fué notificado, que compareció Juana Desrivieres Lebrón y ofreció a nombre del Banco de Puerto Rico, en su carácter de liquidador del Banco Comercial de Puerto Rico, mil dólares por el referido pagaré, cantidad que debería abonarse a los $8,057.89 en garantía de los cuales se lo dió en prenda Arguinzoni y que no habiendo com-

parecido ningún otro postor, ni mejorádose la oferta, se dió por terminado el acto adjudicándose al Banco la buena pro; y

Que el 14 de marzo de 1934, el banco inició un procedimiento por la vía sumarísima para ejecutar la hipoteca constituída en garantía del pagaré por $12,350, pero limitando su reclamación a $6,350, cuyo procedimiento terminó con la adjudicación en pública subasta de las fincas hipotecadas al banco por la suma de $510 para ser abonada a la deuda reclamada.

Con tales alegaciones y esa prueba como base, dictó la corte sentencia en contra de los demandados y éstos apelaron para ante este tribunal.

Como puede verse por la exposición de hechos que antecede, no hay cuestión sobre la existencia del pagaré en que se basa el pleito. Fué suscrito por los demandados y entregado al banco. Representa el saldo de una deuda. Siendo ello así, la evidencia del banco demostró un caso prima facie a su favor.

¿Demostró la evidencia de los demandados la extinción en todo o en parte de la obligación reclamada? Veámoslo.

Después de firmado el pagaré de que se trata por los demandados, uno de ellos, Arguinzoni, otorgó el otro pagaré hipotecario que conocemos y lo dió al banco en prenda de varias obligaciones que tenía para con él contraídas, entre ellas la reclamada en este pleito.

No hay duda alguna a nuestro juicio de que a virtud de la nueva obligación de Arguinzoni la antigua no quedó novada. Para que una obligación quede extinguida por otra que la sustituya, dice el artículo 1158 del Código Civil (ed. de 1930), es preciso que así se declare terminantemente, o que la antigua y la nueva sean de todo punto incompatibles. Y aquí ni se declaró terminantemente al constituirse la prenda que el nuevo pagaré sustituía al antiguo, ni la segunda obligación es incompatible con la primera. Se trata sencillamente de una garantía adicional.

■ La cuestión seria a estudiar y a resolver es la del efecto que puedan tener los actos del banco al instar la venta del segundo pagaré dádole en prenda, al convertirse en dueño del mismo y al ejecutarlo finalmente.

Prescribe el artículo 1771 del Código Civil (ed. de 1930):

"El acreedor a quien oportunamente no hubiese sido satisfecho su crédito, podrá proceder por ante notario a la enajenación de la prenda. Esta enajenación habrá de hacerse precisamente en subasta pública y con citación del deudor y del dueño de la prenda, en su caso. Si en la primera subasta no hubiese sido enajenada la prenda, podrá celebrarse una segunda con iguales formalidades; y si tampoco diere resultado, podrá el acreedor hacerse dueño de la prenda. En este caso estará obligado a dar carta de pago de la totalidad de su crédito."

Ese artículo es igual, en lo pertinente a este caso, al 1872 del Código Civil español, refiriéndose al cual dice Manresa en sus "Comentarios":

"El artículo objeto del presente comentario establece un procedimiento breve, económico y sencillo para la realización del débito asegurado con la prenda, sin que por ello dejen de adoptarse las medidas de precaución que inspiraron las limitaciones y prohibiciones impuestas por nuestro antiguo derecho.

"La razón que aconseja la prohibición de que el acreedor prendario se haga pago de su crédito, desde luego, con la cosa dada en prenda y sin intervención del deudor es obvia y comprensiva sin esfuerzo alguno, pues aparte de la violencia de doctrina que existe en que un título de garantía se convierta en un título de dominio, sin ningún acto jurídico próximo y especial que lo explique, como dice el Sr. Sánchez Román—Sánchez Román, Derecho Civil, segunda edición, Tomo 4, pág. 981—, el mero buen sentido enseña que resultaría vejatorio y lesivo para los deudores el que el acreedor pudiera apropiarse libremente la prenda en pago de su crédito, porque como la estimación de la suficiencia de la garantía, habría de quedar reservada siempre al criterio o al arbitrio de los acreedores, la codicia de éstos podría aprovecharse de las circunstancias, no admitiendo las garantías prendarias ofrecidas sino en el caso de mediar gran diferencia entre el valor real de la cosa dada en prenda y el de la obligación asegurada con ella, ante la expectativa de obtener un considerable lucro al convertirse en dueños de la misma.

"Es, pues, una razón de orden moral la que inspira el precepto de este artículo al establecer como condición precisa en todo caso la venta de la prenda en pública subasta y la necesaria intervención del deudor, por cuyo medio pueden evitarse los perjuicios a que estarían expuestos en otro caso, tanto el principal obligado, como el dueño de la prenda en el caso de que ésta fuera constituída por una tercera persona.

"La potestad concedida al acreedor para proceder a la venta de la cosa prendada, en el caso de que oportunamente no hubiere sido satisfecho su crédito, es conforme al objeto de la prenda, pues de lo contrario no podría cumplirse el fin de la misma. Por eso todas las legislaciones han estimado ineficaz el pacto prohibitorio de dicha venta; pero si bien dicha potestad es inherente al contrato mismo, es indispensable, sin embargo, por la razón ya dicha, que en la enajenación se observen los dos requisitos indicados de la pública subasta y de la citación del deudor, puesto que ambos constituyen 'una formalidad substancial de las enajenaciones reguladas por el art. 1872', como expresamente tiene declarado la Dirección general de los Registros.

"Si la prenda hubiere sido constituída por persona distinta del deudor, deberá ser citado también el dueño de ella por concurrir respecto a éste las mismas razones que exigen la citación del deudor.

"Réstanos indicar que si bien el artículo que examinamos se refiere a la subasta extrajudicial, puesto que sólo habrá de preceder a la venta por ante Notario, esto no obsta al derecho que al acreedor asiste para reclamar judicialmente el pago de su crédito y la venta de la prenda con tal objeto, sólo que en dicho caso la enajenación ha de regularse por las prescripciones de la ley de Enjuiciamiento civil por constituir la misma un trámite del juicio, por cuyo motivo el Código no tenía para qué dictar regla alguna relativa a dicha clase de venta, toda vez que caía fuera de los límites propios del derecho sustantivo.

"En su virtud, el acreedor prendario tiene dos medios para realizar su crédito en el caso de que no sea satisfecho en su oportunidad, a saber: 1,—promover el juicio correspondiente, procediendo por la vía judicial contra la cosa prendada, y 2,—proceder extrajudicialmente a la enajenación de la prenda en pública subasta ante Notario con citación del deudor y del dueño de la misma si fuere persona distinta de aquél, que es el caso a que se refiere el presente artículo.

"Con arreglo a él, si en la primera subasta no fuere enajenada la prenda, podrá celebrarse una segunda con las mismas formali-

dades; es decir, ante Notario y con las citaciones indicadas; y en el caso de que ésta tampoco diere resultado, podrá el acreedor hacerse dueño de la prenda, adjudicándosela en pago, cuya adjudicación es consecuencia lógica de todo remate judicial o extrajudicial en que no hay postor; pero entonces estará obligado a dar carta de pago de la totalidad de su crédito, aunque el importe de éste fuere mayor que el valor de la prenda.'' 12 Manresa, Comentarios al Código Civil Español, pág. 400.

Estamos enteramente conformes con la corte sentenciadora en que es potestativo del acreedor el recurrir o no a la venta por ante notario. Así lo sostiene Manresa y lo resolvió el Tribunal Supremo de España por sus sentencias de octubre 5, 1926, y mayo 12, 1927. Pero a nuestro juicio habiendo el banco optado por dicha venta, estaba obligado a ajustarse a los términos de la ley que la autoriza, y de acuerdo con ellos sólo le estaba permitido hacerse dueño de la prenda después de la segunda subasta, siendo su expreso deber en tal caso otorgar carta de pago de la totalidad de su crédito.

Sostiene el apelado en su alegato que una subasta cuando se compra, basta.

No estamos conformes con esa interpretación de la ley cuando como en este caso el que alega que compró es el acreedor. Ninguna de las partes cita jurisprudencia sobre el particular ni la hemos encontrado por nosotros mismos, pero a nuestro juicio, como ya dijimos, si el acreedor opta por la venta ante notario, está obligado a seguir la ley y la ley sólo lo autoriza a hacerse dueño de la prenda en la segunda subasta y entonces a dar carta de pago de la totalidad de su crédito. Si se reconociera al acreedor el derecho a ser postor en la primera subasta y a adquirir como tal la prenda por una suma inferior al crédito garantizado por ella para ser abonada a dicho crédito, se destruiría lo que tuvo en mente el legislador, porque de hecho se estaría reconociendo al acreedor el derecho a hacerse dueño de la prenda por ese otro medio, en violación de lo expresamente fijado en el estatuto.

Dados los términos en que se llevó a efecto la subasta, pudo el deudor pedir que se anulara. No lo hizo. Demandado por el acreedor en pago de la deuda, prefirió aceptar su validez, alegando la extinción de la obligación reclamada por pago, esto es, dando a la llamada por el banco compra de la prenda en pública subasta, el alcance de haberse hecho el acreedor dueño de la prenda con los efectos que la misma ley prescribe, a saber, obligación de dar carta de pago de la totalidad de su crédito.

Y le asiste la razón a nuestro juicio. El acreedor debe estar y pasar por las consecuencias de sus propios actos. Supongamos que en vez de un pagaré la prenda hubiera consistido en una alhaja y que hubiera ocurrido lo mismo que aquí ocurrió, ¿existiría duda de que al adquirir el acreedor para sí la alhaja implicaba el cobro de la deuda? A nuestro juicio, ninguna.

Habiendo llegado a la anterior conclusión, no es necesario estudiar y resolver la otra cuestión sobre pago parcial levantada, esto es, la de que en todo caso la parte de la deuda que se reconoce por el acreedor que ha cobrado debería prorratearse entre todas las obligaciones garantizadas por el pagaré hipotecario que se dió en prenda.

*Debe revocarse la sentencia recurrida y en su lugar dictarse otra declarando la demanda sin lugar, sin especial condenación de costas.*