CORPORACIÓN AZUCARERA SAURÍ & SUBIRÁ, demandante y recurrida, *v.* CARLOS C. CLAVELL Y SU ESPOSA MERCEDES PORRATA DORIA, demandados y recurrentes; COSME IRIZARRY, tercero demandado recurrido.

*Número:* 153    *Resuelto:* 8 de marzo de 1963

---

*Inéz Acevedo de Campos, R. Muñoz Ramos* y *Ariel Colón Clavell,* abogados de los recurrentes; *Rivera Cestero & Rúa* y *C. A. Romero Barceló,* abogados de la recurrida.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Por la escritura número 67 de 4 de agosto de 1952, otorgada ante el notario público Leopoldo Tormes García, la sociedad Clavell e Irizarry y la Corporación Azucarera Saurí

y Subirá, recurrida en este caso, celebraron un contrato de molienda de cañas y refacción agrícola. En virtud de dicho contrato la referida sociedad convino en sembrar unas trescientas cuerdas en cañas en dos fincas, subarrendada una y arrendada la otra, y entregar las cañas en el batey de la Central Constancia, perteneciente a la recurrida, durante las zafras de 1953-54 a 1963-64, o sea, durante diez zafras. Se acordó, además, que durante tales zafras la Central Constancia concedería un crédito refaccionario hasta la suma de $10,800 por cada zafra, más dos créditos de mil dólares cada uno para cubrir intereses y costas, gastos, desembolsos y honorarios de abogado. Dicho crédito quedaría garantizado por un gravamen preferente sobre las plantaciones y el azúcar producido por las cañas de acuerdo con la ley sobre contratos de refacción y molienda de cañas de 10 de marzo de 1910, según enmendada. Para dirimir el conflicto entre las partes en este caso, conviene hacer un recuento y subsiguientemente un análisis de lo acordado por las partes formalmente en varias escrituras públicas admitidas en evidencia y que forman parte del récord.

*A.* Los incisos *B* y *G* de la cláusula decimosexta de la referida escritura disponen que:

"(*B*)En caso de incumplimiento a juicio de 'LA CENTRAL' por parte de 'EL COLONO' de las estipulaciones de este contrato, queda expresamente convenido que 'LA CENTRAL' podrá entrar en las tierras descritas en este contrato y cultivar, cuidar y recolectar las cañas de las mismas y convertirlas en azúcar y con ese objeto, usar todo el equipo que a dichos fines tenga destinado 'EL COLONO', y disponer de los azúcares producidos y retener para sí, las liquidaciones o el importe de los mismos hasta cubrir cualquier otra deuda que tenga 'EL COLONO' con 'LA CENTRAL'.

(*G*) Durante las diez zafras a que se refiere el contrato de molienda 'LA CENTRAL' podrá dar al COLONO para refacción de las fincas a que se contrae este contrato aquellas cantidades que a su juicio sean necesarias para la siembra y cultivo, corte y arrastre de las cañas que produzcan dichas fincas y que están dentro de la cuota asignada al COLONO, y

puedan ser molidas por 'LA CENTRAL', y podrá asimismo 'LA CENTRAL' en caso de que se incapacite, fallesca [*sic*] o se ausente Don Cosme Irizarry, miembro de la sociedad CLAVELL E IRIZARRY, realizar los cultivos en todas las fincas que pertenezcan actualmente o en el futuro a la Sociedad en cualquier concepto por cuenta del COLONO entendiéndose en todo ello con el otro socio DON CARLOS C. CLAVELL, y todas las cantidades que se empleen por la CENTRAL para esos cultivos, hasta la suma de TREINTA MIL DOLARES (30,000.00) en cada zafra, quedarán garantizadas como crédito refaccionario preferente a favor de 'LA CENTRAL' sobre todas las cañas comprendidas en estos contratos hasta que 'LA CENTRAL' cobre totalmente el principal y los intereses que el capital devengue al tipo convenido."

*B.* La cláusula decimoséptima provee:

"La Sociedad CLAVELL E IRIZARRY (EL COLONO) reconoce, que la Corporación Azucarera Saurí y Subirá, le ha entregado al Socio DON CARLOS C. CLAVELL distintas partidas de dinero antes de esta fecha, que han sido empleadas en la preparación y cultivo de las fincas arrendadas y subarrendadas por la Sociedad CLAVELL E IRIZARRY a dicho DON CARLOS C. CLAVELL y en los cuales terrenos ha continuado la dicha sociedad los cultivos para cumplir con el contrato de MOLIENDAS con 'LA CENTRAL'. Esas cantidades así entregadas montan hoy a la suma de CATORCE MIL QUINIENTOS OCHENTA Y TRES DOLARES SETENTA Y CINCO CENTAVOS (14,583.75) y dicha deuda la asume la Sociedad, hasta completar la cantidad de TREINTA MIL DOLARES ($30,000.00), pues los QUINCE MIL CUATRO CIENTOS DIEZ Y SEIS DOLARES VEINTICINCO CENTAVOS ($15,416.25) que completan dicho importe, se los entrega 'LA CENTRAL' al 'COLONO' en un check por dicho importe contra su cuenta corriente en el Banco Crédito y Ahorro Ponceño . . . Esos TREINTA MIL DOLARES ($30,000.00) antes referidos, se obliga y compromete 'EL COLONO', o sea, la Sociedad CLAVELL E IRIZARRY, pagarlos a 'LA CENTRAL' dentro del término de DIEZ AÑOS a partir desde esta fecha, mediante abonos todos los años, de no menos de TRES MIL DOLARES (3,000.00), junto con los intereses que dichos treinta mil dólares devenguen cada año, al tipo del SEIS PORCIENTO anual (6%), . . ."

*C.* Por la cláusula decimooctava las partes estipularon que:

"DON CARLOS C. CLAVELL y DON COSME IRIZARRY, se hacen responsables solidariamente de todas las obligaciones aquí contraídas por la Sociedad CLAVELL E IRIZARRY, por ellos constituida, a favor de la CORPORACION AZUCARERA SAURI Y SUBIRA, y los mismos se comprometen individualmente en su carácter particular, para con dicha Corporación a darle todas aquellas garantías que la CENTRAL le exija bien sea hipotecarias o prendarias, cuando a juicio de la CENTRAL estas se hagan necesarias para asegurar el cobro de las cantidades todas que 'EL COLONO' le adeude, según se deja aquí expresado."

Por la escritura Núm. 19 de 13 de septiembre de 1954, otorgada ante el notario público Julio Viera Morales por la corporación recurrida, Central Mercedita, Inc., los recurrentes y el tercero demandado Cosme Irizarry y su esposa, la recurrida cedió el contrato de molienda antes mencionado a la Central Mercedita, Inc., reconociéndose que en aquel momento la sociedad en cuestión y sus gestores Clavell e Irizarry adeudaban a la recurrida por concepto de la referida refacción la suma de $27,000.00, más intereses. La Central Mercedita se obligó a descontar y pagar anualmente del importe de las liquidaciones de las cañas de la sociedad, entregándolos a la recurrida, los plazos anuales de $3,000.00, más intereses, según lo pactado en la cláusula decimoséptima de la escritura número 67 antes transcrita, más los intereses correspondientes.

*D.* La estipulación Cuarta de la escritura número 19 dispone en parte que:

"Aclaran las partes, que el contrato SOBRE REFACCION AGRICOLA que la sociedad Clavell e Irizarry tiene concertado con la Corporación Azucarera Saurí & Subirá ha quedado SIN EFECTO, excepto lo relativo a la deuda pendiente de pago por parte de los señores Clavell e Irizarry a la dicha Corporación Azucarera Saurí & Subirá que a esta fecha asciende a la suma antes reseñada, la cual deuda expresamente reconocen dichos deudores, así como las garantías personales de don Carlos C.

Clavell y don Cosme Irizarry, las establecidas como gravamen preferente sobre las cañas . . . a favor todo ello de la Corporación Azucarera Saurí & Subirá . . . y renunciando, así mismo, la dicha Corporación Azucarera Saurí & Subirá, a favor de la Central Mercedita, Inc., todos sus derechos, cualesquiera que estos sean, sobre dicho contrato sobre molienda de cañas que tenía concertado con la sociedad Clavell e Irizarry según se deriva del contrato antes reseñado."

*E.* Los incisos (b) y (c) de las Cláusulas Adicionales de dicha escritura proveen que:

"b) Para dar el mayor cumplimiento a los pactos y condiciones aquí establecidos, la sociedad Clavell e Irizarry y sus gestores, o sucesores, por la presente instruyen y facultan a la compareciente Central Mercedita, Inc., para que luego de practicada la liquidación final de sus cuentas cada año con esta firma y luego de satisfacer el crédito refaccionario, separará de cualquier sobrante preferentemente la cantidad de TRES MIL DOLARES ($3,000.00) más los intereses devengados, para ser pagados según corresponda a la Corporación Azucarera Saurí & Subirá o quien sus derechos represente, y esta obligación permanecerá vigente e irrevocable durante toda la vigencia del presente contrato.

c) Nada de lo aquí convenido se entenderá en el sentido de relevar a la firma Clavell e Irizarry y sus gestores, o sus sucesores, del pago de las obligaciones aquí contraídas puntualmente y a su vencimiento cuando por cualquier circunstancia no hubiera sobrante en las liquidaciones de sus cañas para cubrir las obligaciones que se derivan del contrato en cuanto a la sociedad Clavell e Irizarry, sus gestores o sucesores se refiere, para con la Corporación Azucarera Saurí & Subirá."

*F.* Por la escritura número 20 de 12 de febrero de 1954, otorgada ante el notario público Sergio León Lugo, Cosme Irizarry y su esposa Caridad Franceschi, de una parte y Carlos C. Clavell, de la otra, convinieron la cesión del interés de Irizarry en la sociedad a favor de Clavell y a esos efectos estipularon:

. . . . . . . . . . . . . . . . . . . . C U A R T A . . . . . . . . . . . . . . . . . . . .

—"Es convenido que don COSME IRIZARRY CONTINUARA mientras dure el contrato de molienda de caña y re-

facción agrícola constante en la escritura número cuatro, digo sesenta y cuatro de cuatro de agosto de mil novecientos cincuenta y dos, ante el Notario don Leopoldo Tormes García, a favor de la Corporación Azucarera Saurí y Subirá con la responsabilidad solidaria que contrajo de acuerdo con la cláusula DECIMO OCTAVA de dicho contrato a que se hace referencia en el hecho DECIMO de esta escritura."

*G.* ................S E G U N D A................

—"Esta cesión, traspaso y enagenación [*sic*] . . . incluye así mismo cuanto derecho, acción e interés tiene o pueda tener Don COSME IRIZARRY en el contrato de molienda de caña y refacción agrícola celebrado por la Sociedad CLAVELL E IRIZARRY y por los mismos socios gestores don CARLOS C. CLAVELL y don COSME IRIZARRY con la Corporación Azucarera Saurí y Subirá. Incluye también cuanto derecho, acción e interés tiene o pueda tener don COSME IRIZARRY como Socio Gestor y en su participación en todo lo que pertenezca o pueda pertencer a dicha Sociedad en el futuro, sin limitación y condición alguna."

*H.* ................Q U I N T A................

—"Don CARLOS C. CLAVELL como único dueño de todo lo que representa la Sociedad civil agrícola CLAVELL E IRIZARRY, de acuerdo con los términos de esta escritura, se obliga a cumplir bien y fielmente con todo lo estipulado en la escritura número sesenta y seis de arrendamiento, subarrendamiento y cesión de opción de compra, . . . subrogándose totalmente en la sociedad CLAVELL E IRIZARRY a todos los efectos del cumplimiento de todas las disposiciones contenidas en dicha escritura."

*I.* ................S E X T A................

—"Así mismo don CARLOS C. CLAVELL asume toda la responsabilidad y se obliga a [*sic*] cumplimiento estricto del contrato de molienda de caña y refacción agrícola a favor de la Corporación Saurí y Subirá, de acuerdo con los términos, cláusulas y condiciones y estipulaciones contenidas en la escritura número sesenta y cuatro de cuatro de agosto de mil novecientos cincuenta y dos, ante el Notario don Leopoldo Tormes García a que se hace referencia anteriormente."

*J.* .................O C T A V A.................

—"Don CARLOS C. CLAVELL asume totalmente relevando de toda responsabilidad, pago y reclamación a don COSME IRIZARRY, las pérdidas sufridas de TREINTA Y DOS MIL TRESCIENTOS CINCUENTA Y SEIS DOLARES CON SETENTA Y CINCO CENTAVOS ($32,356.75) en el año de mil novecientos cincuenta y dos, así como asume personalmente las pérdidas sufridas hasta el treinta y uno de julio de mil novecientos cincuenta y tres, por la cantidad de CUARENTA Y OCHO MIL SEISCIENTOS CUARENTA Y DOS DOLARES CON OCHENTA Y TRES CENTAVOS ($48,642.83) en la sociedad CLAVELL E IRIZARRY."

*K.* .................N O V E N A.................

—"La cesión, traspaso y enagenación [*sic*] de la participación, derecho, acción e interés de don COSME IRIZARRY a favor de don CARLOS C. CLAVELL, como se hace constar anteriormente, se verifica por la cantidad de VEINTE MIL CUATROCIENTOS SETENTA Y CINCO DOLARES ($20,475.00), . . . y para toda claridad se hace constar que estos VEINTE MIL CUATRO CIENTOS SETENTA Y CINCO DOLARES ($20,475.00) que representa el precio y consideración en el traspaso de toda acción, participación, derecho e interés de don COSME IRIZARRY en la sociedad CLAVELL E IRIZARRY a favor de don CARLOS C. CLAVELL, procede de los QUINCE MIL DOLARES ($15,000.00) que aportó don COSME IRIZARRY a la sociedad CLAVELL E IRIZARRY en el capital social, y los otros CINCO MIL CUATROCIENTOS SETENTA Y CINCO DOLARES ($5,475.00) por los servicios personales que como Socio Gestor ha venido prestando don COSME IRIZARRY a la Sociedad CLAVELL E IRIZARRY hasta la presente fecha."

*L.* .................D E C I M A.................

". . . Y don CARLOS C. CLAVELL expresamente hace constar que se hace cargo a toda responsabilidad en la continuación de los negocios de la SOCIEDAD CLAVELL E IRIZARRY como único dueño de la misma, de todos sus bienes, derechos, acciones y obligaciones y *releva de toda responsabilidad al señor COSME IRIZARRY tanto en las obligaciones pasadas como en las futuras, así como en todo acto, contrato y relaciones de dicha sociedad CLAVELL E IRIZARRY.*" (Énfasis suplido.)

*M.* . . . . . . . . . . . . D E C I M A T E R C E R A . . . . . . . . . . .

—"Desde la fecha de la presente escritura en adelante don COSME IRIZARRY se aparta, con excepción de su responsabilidad en el contrato de molienda de cañas y refacción agrícola con la Corporación Azucarera Saurí y Subirá, de todo acto relativo a la Sociedad CLAVELL E IRIZARRY y toda gestión, acto o contrato así como la continuación del negocio de la Sociedad CLAVELL E IRIZARRY será bajo la actuación de su único dueño don CARLOS C. CLAVELL."

*N.* En 13 de octubre de 1954, por la escritura número 168, otorgada ante el notario público Sergio León Lugo, los recurrentes disolvieron la sociedad, declarando en dicha escritura que:

". . . Haciendo constar Don Carlos C. Clavell expresamente toda responsabilidad en la continuación de los negocios de la Sociedad 'CLAVELL E IRIZARRY' como único dueño de la misma, en todos sus bienes, derechos, acciones y obligaciones, *relevando de toda responsabilidad al señor Cosme Irizarry,* tanto por las obligaciones anteriores como por las futuras, así como en todo acto, contrato y relaciones de dicha Sociedad 'CLAVELL E IRIZARRY', incluyendo la cesión y cualesquiera otra cláusula o condición constante en la escritura dicha, *número veinte de doce de febrero de mil novecientos cincuenta y cuatro,* y que en ella no estén incluidos en la relación de hechos anteriores." (Énfasis suplido.)

*O.* El párrafo Tercero de la anterior escritura dispone:

—"Que don CARLOS C. CLAVELL siendo el único dueño de los bienes, derechos, acciones, así como comprometiéndose expresamente en lo convenido en todas las obligaciones y contratos y demás términos y condiciones de la sociedad 'CLAVELL E IRIZARRY', y todo según se ha hecho constar anteriormente; y habiéndose confundido en él como único dueño, la Sociedad 'CLAVELL E IRIZARRY' quiere disolverla, y lo hace constar por la presente escritura y bajo las siguientes cláusulas:

. . . . . . . . . . . . . . . . . . . . . . . . . . P R I M E R A . . . . . . . . . . . . . . . . . . .

Como único dueño de la Mercantil 'CLAVELL E IRIZARRY' en virtud de la compra de todos los derechos, acciones, bienes

y participaciones que en ella correspondieron al único otro socio Don COSME IRIZARRY LUGO, según se hace constar en el hecho segundo de esta escritura, se han confundido en el señor CLAVELL todos los derechos, propiedad y posesión de bienes y obligaciones de toda clase en contra y a favor de la Sociedad 'CLAVELL E IRIZARRY'; y no siendo ya necesaria continuarla con el nombre y personalidad jurídica esta Sociedad, don Carlos C. Clavell, como único dueño, procede a disolver y disuelve dicha Sociedad a todos los efectos legales."

. . . . . . . . . . . . . . . . . . . .S E G U N D A. . . . . . . . . . . . . . . . . . . .

"Hace constar Don CARLOS C. CLAVELL que habiéndose confundido en él la personalidad jurídica así como la posesión, dominio y haber adquirido todos los bienes, derechos, acciones, interés y obligaciones a favor y en contra de la dicha Sociedad 'CLAVELL E IRIZARRY', se obliga expresamente a cumplir, como dueño, del activo y pasivo de la dicha Sociedad, así como de todas las obligaciones contraídas por la misma, tanto a favor como en contra; así como a cumplir todos los requisitos legales que a dicha Sociedad le correspondían cumplir, de acuerdo con su escritura de constitución y actos y contratos subsiguientes.

. . . . . . . . . . . . . . . . . . . .T E R C E R A. . . . . . . . . . . . . . . . . . . .

Y disuelta así la Sociedad 'CLAVELL E IRIZARRY', a que en esta escritura se hace referencia, queda totalmente extinguido su nombre a todos los efectos legales, así como su capacidad jurídica como tal Sociedad."

En agosto 24 de 1956 radicó la recurrida demanda en contra de los recurrentes en cobro de $21,000 restantes e insolutos del principal de $30,000 del préstamo refaccionario convenido en la escritura número 67, más intereses desde 4 de agosto de 1956, toda vez que en esta última fecha el recurrente Clavell dejó de pagar a la recurrida el plazo de $3,000 y sus intereses adeudados hasta entonces. Se solicitó, además, un pronunciamiento en el sentido de que la recurrida tome posesión de las tierras descritas en la demanda y proceda a cultivar, cuidar y recolectar las cañas, convirtiéndolas en azúcar y servirse del producto de dichos azúcares y de los pagos de compensación que puedan ser pa-

gados por el Secretario de Agricultura de los Estados Unidos hasta que la recurrida cobre totalmente las cantidades que el recurrente Clavell le adeuda. Contestaron los recurrentes negando su responsabilidad solidaria; y alegando que la responsabilidad que puedan tener la tienen como sucesores de la sociedad y conjuntamente con el tercero demandado Irizarry, quien continuó responsable de la deuda que motiva la demanda; que dicha deuda se ha reducido en $12,500, no está vencida ni tampoco está vencido el plazo de $3,000 a que se refiere la demanda ya que por la escritura número 19 se convino que los plazos mensuales los pagaría la Central Mercedita, Inc., de las liquidaciones de las cañas de la sociedad, de manera que tal plazo no vencía hasta el 1ro. de marzo de 1957.

En 6 de septiembre de 1956 radicaron los recurrentes una demanda contra tercero demandado solicitando que la Central Mercedita, Inc., fuese condenada a pagar a la corporación recurrida el referido plazo de $3,000, más intereses. Por vía de contestación, el tercero demandado, Central Mercedita, alegó que no está en mora en el pago de dichos plazos ya que, en adición a su obligación de pagar el crédito preferente de la Production Credit Association (la corporación demandante ya había convenido postergar su crédito refaccionario con la sociedad a favor de la referida asociación), no se ha podido efectuar la liquidación total entre los recurrentes y la Central Mercedita, Inc., porque el referido pago de compensación no se puede liquidar hasta abril del año siguiente; pero que no obstante, a base de un estimado de la liquidación en cuestión, procedió esta última a consignar la suma de $4,277 para cubrir el plazo de $3,000 correspondiente al año 1956, más intereses. En su contestación a la demanda contra tercero, la recurrida negó que existiese novación, modificación o extensión de las obligaciones de los recurrentes para con la recurrida, pues la obligación de Central Mercedita, Inc., es adicional a y no alteró, la obligación de los recurrentes de cumplir puntualmente y a su venci-

miento sus obligaciones a favor de la recurrida. Alegó que las contenciones de la recurrida no están en forma alguna afectadas por la demanda contra tercero a que acabamos de hacer referencia ni por la contestación de la misma por parte de Central Mercedita, Inc.

Radicaron los recurrentes, además, una demanda contra tercero, esta vez contra Irizarry, el 6 de septiembre de 1956 alegando que éste les adeudaba la mitad de cualquier suma en descubierto de la referida deuda original de $30,000 y de otros pagos de principal e intereses pagados por los recurrentes a la recurrida. En su contestación, Irizarry negó tal responsabilidad por razón de los claros términos de la antes mencionada escritura número 20.

Según la relación de hechos que hizo el tribunal de instancia en su dictamen de abril 17 de 1959, la Central Mercedita hizo las siguientes consignaciones en este caso: El 7 de septiembre de 1956, la suma de $4,277; el 14 de mayo de 1957, $3,840; el 16 de junio de 1958, $3,982.50 y el 10 de marzo de 1959, $3,530. Resolvió dicho tribunal que: 1) a la fecha de la radicación de la demanda en este caso el recurrente Clavell adeudaba a la recurrida la suma de $21,000; 2) esta suma constituia una deuda líquida y exigible desde el 4 de agosto de 1956 en que venció y no se pagó un plazo de la misma; 3) toda vez que ni la sociedad ni Clavell cumplieron con lo dispuesto en el contrato de refacción, quedó inoperante la disposición de que la recurrida postergase su gravamen preferente que garantizaba dicha deuda; 4) Clavell no ha descuidado ni tiene en un casi total abandono las plantaciones de caña así gravadas; 5) el tercero demandado Irizarry no adeuda cantidad alguna a los recurrentes ni tiene responsabilidad alguna para con éste por haber sido relevado de la misma, pero su obligación para con la recurrida subsiste; 6) no ocurrió novación alguna de la obligación original asumida en la escritura número 67 por la sociedad y los señores Clavell e Irizarry para con la recurrida, determinándose que la obligación asumida por Central Mercedita,

Inc., en la escritura número 19, de pagar los plazos de la referida deuda de las liquidaciones de las cañas de la sociedad, constituyó una garantía adicional. Como resultado, se declaró con lugar la demanda de la recurrida por el balance insoluto de la deuda que a base de las referidas consignaciones ha sido reducido a $9,000, más intereses, costas, y $3,000 para honorarios de abogado. Se dictaminó, además, que la recurrida tome posesión de las fincas y plantaciones en cuestión pudiendo entrar en las mismas, cultivar, cortar y recolectar las cañas, molerlas y convertirlas en azúcar en la Central Mercedita, Inc., pudiendo usar todo el equipo que a dichos fines tenga destinado el recurrente Clavell y disponer de tales azúcares, reteniendo para sí las liquidaciones o el importe de las mismas hasta completar la suma adeudada. Por último, se declararon sin lugar las dos demandas contra tercero radicadas por los recurrentes en este caso.

No conforme con esta decisión los recurrentes radicaron el presente recurso haciendo ocho señalamientos que en síntesis alegan que el tribunal de instancia incurrió en error al hacer sus determinaciones (1), (2), (5) y (6) anteriores.

Creemos que no se han cometido los errores señalados y, por lo tanto, que la sentencia del tribunal de instancia en este caso debe confirmarse. Discutiremos a continuación los argumentos aducidos por los recurrentes en su hábil alegato en apoyo de las imputaciones de error que han señalado.

1) Se arguye, en primer término, que el tribunal de instancia incurrió en error al resolver que Irizarry no es deudor de ni tiene responsabilidad alguna hacia Clavell por haber quedado expresamente relevado por éste de tal responsabilidad. A esos efectos se insiste en que por virtud de las cláusulas Cuarta y Decimotercera de la escritura número 20, la responsabilidad solidaria de Irizarry no desapareció y en todo tiempo ha subsistido (el texto de estas disposiciones se transcribe bajo los párrafos F y M precedentes). No tenemos duda de que esto es así en cuanto a la recurrida se refiere, pues Irizarry no podía quedar relevado de tal res-

ponsabilidad sin el previo consentimiento expreso e indubitable de aquélla. Pero entre los garantizadores solidarios, como lo eran en este caso Clavell e Irizarry, podía pactarse, como en efecto se pactó por la cláusula Décima (transcrita bajo el párrafo L anterior) de la escritura número 20, que Clavell se hacía cargo de las obligaciones de la sociedad relevando a Irizarry de toda responsabilidad *"tanto en las obligaciones pasadas como en las futuras así como de todo acto, contrato y relaciones de dicha sociedad Clavell e Irizarry."* (Énfasis suplido.) Luego, en la escritura número 168, por virtud de la cual se disuelve esa sociedad, Clavell se reafirma en cuanto a ese pacto (véase texto del párrafo Segundo de dicha escritura transcrito en el párrafo N anterior) o por lo menos lo interpretó en ese sentido; lo cual es importante para determinar y aclarar dicho acuerdo. *Caballero*. v. *Kogan*, 73 D.P.R. 666 (1952); *Atlas Commercial Co*. v. *Gómez*, 25 D.P.R. 889 (1917). No existe conflicto alguno entre las disposiciones de las cláusulas Cuarta y Décimo Tercera (transcritas en los párrafo F y M anteriores) de la escritura número 20 y la estipulación Cuarta de la escritura número 19 (transcrita en el párrafo D anterior) de una parte, y las cláusulas Segunda, Quinta, Sexta, Octava, Novena y Décima de la escritura número 20 (transcritas en los párrafos G hasta L ambos inclusive, anteriores) y las disposiciones de los párrafos Segundo y Tercero de la escritura número 168 sobre disolución de sociedad, (que se transcriben en los párrafos N y O anteriores), de la otra parte. Los primeros reafirman la garantía de Irizarry para con la recurrida ya que Irizarry no se podía relevar de ella sin el consentimiento de la recurrida, y los segundos constituyen el pacto de Clavell de asumir dicha garantía renunciando al derecho que le confiere el Art. 1098 del Código Civil, 31 L.P.R.A. sec. 3109(1) de reclamar de Irizarry la parte que le correspondía

---

(1) El Art. 1098 del Código Civil dispone:

"El pago hecho por uno de los deudores solidarios extingue la obligación.

El que hizo el pago sólo puede reclamar de sus codeudores la parte

del pago hecho por Clavell con cargo a la deuda de ambos a favor de la recurrida. De ahí que no exista en la sentencia del tribunal de instancia la inconsistencia que alegan los recurrentes, al resolver dicho tribunal que Irizarry no es deudor de Clavell ni tiene responsabilidad alguna para con éste, pero que, sin embargo, la obligación de Irizarry para con la recurrida subsiste. La declaración jurada suscrita por Irizarry en 20 de enero de 1957 al efecto de que no adeuda nada a Clavell por razón de las cantidades pagadas por ésta a la recurrida de acuerdo con el contrato de refacción y molienda de cañas toda vez que fue relevado de todo ello por Clavell de acuerdo con la escritura número 20, pero que quedó obligado con la recurrida para cuando Clavell dejase de cumplir las obligaciones asumidas por la sociedad y sus gestores, que son ellos dos, bajo el referido contrato, en nada alteran y, por el contrario, confirman la situación legal que acabamos de explicar. Arguye el tercero-demandado en su alegato, con razón a nuestro juicio, que el pagarle Clavell a Irizarry la suma de $20,475 por la cesión de sus derechos en la sociedad, según fue convenido entre ellos en la referida escritura número 20 (véase lo transcrito en el párrafo K anterior) sin descontársele nada a Irizarry de lo que Clavell hubiera pagado hasta la fecha de dicha escritura a la recurrida y sin reservarse en dicha fecha cantidad alguna que le correspondiera a Irizarry pagar de la deuda de $30,000 contraida por la sociedad con la recurrida, demuestra que Clavell asumió exclusivamente el pago de esa obligación no obstante el reconocimiento de Irizarry de continuar obligado por su garantía de dicha deuda a favor de la recurrida. Manresa, *Código Civil*, tomo 8, Vol. II págs. 499 y 520, 5ta. ed. 1950.

2) Los errores marcados Tercero al Sexto, ambos inclusive, se refieren a la cuestión de la exigibilidad de la deuda

que a cada uno corresponda, con los intereses del anticipo.

La falta de cumplimiento de la obligación por insolvencia del deudor solidario será suplida por sus codeudores a prorrata de la deuda de cada uno." (31 L.P.R.A. sec. 3109)

originalmente contraida por la sociedad con la recurrida, por no haberse pagado un plazo de la misma el 4 de agosto de 1956.

*P.* La cláusula decimoséptima de la escritura número 67 por la que se concertó el contrato de refacción y molienda de caña, provee en la parte pertinente lo siguiente:

". . . Esos TREINTA MIL DOLARES ($30,000.00) antes referidos, se obliga y compromete 'EL COLONO', o sea, la Sociedad CLAVELL E IRIZARRY, pagarlos a 'LA CENTRAL' dentro del término de DIEZ AÑOS a partir desde esta fecha, mediante abonos todos los años, de no menos de TRES MIL DOLARES ($3,000.00), junto con los intereses que dichos treinta mil dólares devenguen cada año, al tipo del SEIS PORCIENTO anual (6%), . . ."

Por la estipulación Cuarta de la escritura número 19 (transcrita en el párrafo D anterior) las partes convinieron que el contrato de refacción quedara sin efecto *"excepto lo relativo a la deuda pendiente de pago por parte de los señores Clavell e Irizarry . . . la cual deuda expresamente reconocen dichos deudores así como las garantías personales de . . . Clavell y . . . Irizarry y las establecidas como gravamen preferente sobre las cañas . . ."* (Énfasis suplido.) La cláusula adicional (c) de dicha escritura (transcrita en el párrafo E anterior) aclara que *"Nada de lo aquí convenido se entenderá en el sentido de relevar a la firma Clavell e Irizarry . . . del pago de las obligaciones aquí contraídas puntualmente y a su vencimiento . . ."* (Énfasis suplido.) Ahora bien, ¿cuál era la fecha convenida para tal vencimiento, o sea el de los plazos anuales a que se refiere lo dispuesto en la cláusula decimoséptima de la referida escritura (transcrita en el párrafo P anterior)? El propio Clavell contesta esta pregunta al testificar que el pirmer pago de $3,000 a cuenta de la deuda refaccionaria de $30,000 se hizo en 4 de agosto de 1953 (T.E. pág. 127) y luego en su carta del 5 de agosto de 1955, dirigida a la recurrida en la que remite $4,400 de principal e intereses de la referida

deuda que cubre el plazo que venció en 4 de agosto de 1955. Anteriormente, o sea, en 18 de septiembre de 1954, Clavell había cubierto el plazo que había vencido en 4 de agosto de ese año, es decir, días después de otorgada la escritura número 19. Previamente, esta fecha de 4 de agosto de cada año como la de vencimiento de los plazos en cuestión había quedado aclarada en el párrafo Primero de la escritura número 19 por virtud del cual se reconoce la deuda contraida por la sociedad a favor de la recurrida en *"la suma de TREINTA MIL DOLARES ($30,000.00) que se comprometieron a pagarle dentro del término de diez años mediante abonos de tres mil dólares pagaderos los días 4 de agosto de todos los años."* (Énfasis suplido.) Alegan los recurrentes, sin embargo, que por razón de las disposiciones de la escritura número 19, se alteró la forma de pago de la referida deuda. Según su razonamiento, la garantía original quedó sustituida por la garantía de las liquidaciones de las cañas que habría de hacer la Central Mercedita, de acuerdo con la escritura número 19; toda vez que al obligarse esta última a pagar los referidos plazos de tales liquidaciones se cambió la fecha de vencimiento de los plazos aludidos, pues tales liquidaciones no se hacen hasta marzo del año siguiente; y, por lo tanto, la escritura número 19 efectuó una novación del contrato de refacción y molienda original. Se basa esta argumentación en la cláusula Segunda de la escritura número 19 que dispone:

Q. ". . . [L] a dicha Central Mercedita, Inc., que es dueña de la Central Mercedita radicada en el Barrio Sabanetas de Ponce, se compromete a asumir la obligación de molienda de cañas que dicha Corporación Azucarera Saurí & Subirá había contraído con dicha sociedad Clavell e Irizarry en el dicho documento antes transcrito, y reconociendo como reconoce la dicha sociedad Clavell e Irizarry y sus gestores don Carlos C. Clavell y don Cosme Irizarry, que actualmente adeudan a la dicha Corporación Azucarera Saurí & Subirá, por concepto de refacción, la suma de VEINTISIETE MIL DOLARES ($27,000.00), más intereses devengados por dicha suma hasta esta fecha, la Central

Mercedita, Inc. se obliga y compromete a descontar y pagar anualmente, del importe de las liquidaciones de las cañas que la dicha sociedad Clavell e Irizarry o cualquiera de sus gestores don Carlos C. Clavell y don Cosme Irizarry, entreguen para ser molidas en la dicha Central Mercedita, los abonos de tres mil dólares ($3,000.00) que se comprometieron los mismos a pagar a la Corporación Azucarera Saurí & Subirá según la escritura antes transcrita expresa, más los intereses al tipo convenido que el capital adeudado devengue hasta dejar pagada totalmente dicha deuda."

Se invoca, además, la cláusula Cuarta de dicha escritura que se transcribe en el párrafo D anterior.

De la prueba surgen varias circunstancias que no solamente destruyen esta contención de los recurrentes sino que nos obligan a formular una conclusión en contrario. En primer lugar, en virtud de la referida cláusula Cuarta, Clavell e Irizarry volvieron a reconocer su deuda a favor de la recurrida, sus garantías personales de la misma y el gravamen preferente sobre las cañas que se convino en la escritura número 67. En segundo lugar cabe preguntar por qué, si la práctica en el negocio de siembra y cultivo de cañas es que la central cobre su deuda refaccionaria al liquidarse el producto derivado de la molienda de las cañas, no se atemperaron los términos de la escritura número 19 a tal situación. Podría decirse que siendo esa la práctica, resultaba innecesaria convenirla en dicha escritura. Pero es que las circunstancias de este caso no se ajustaban a tal práctica, pues el acreedor refaccionario vino a ser una persona separada, distinta e independiente de la central. Dicho acreedor exigió y obtuvo de los recurrentes no tan sólo el reconocimiento de la deuda refaccionaria y la continuidad de las garantías personales y del gravamen preferente sobre las cañas sino además el pago de los plazos puntualmente a su vencimiento. En armonía con la anterior exigencia, Clavell pagó en 18 de septiembre de 1954 el plazo que venció inmediatamente antes y en 5 de agosto de 1955 el que venció al año siguiente de otorgarse la escritura número 19, o sea, los pagó poco des-

pués de vencidos. Es evidente pues, que el convenio de la Central Mercedita de pagar los referidos plazos de las liquidaciones era una garantía adicional y no una sustitución de las previamente existentes.

El hecho que en la referida cláusula adicional (c) de la escritura número 19 se haya dispuesto que nada de lo convenido en dicha escritura se entendería en el sentido de relevar a la sociedad o a Clavell o a Irizarry del pago de sus obligaciones puntualmente a su vencimiento cuando por cualquier circunstancia no hubiere sobrante en las liquidaciones de sus cañas, no refuerza en forma alguna el argumento de los recurrentes. Tampoco está en conflicto con la conclusión a que hemos llegado de que las partes no convinieron cambio alguno en el vencimiento de los plazos anuales de la deuda en cuestión. Esta disposición no puede tener significación independiente de las demás disposiciones de la escritura número 19 al extremo de variar la forma de pago de los plazos de la deuda refaccionaria, de manera que la recurrida quedase obligada, como sostienen los recurrentes, a requerir de pago a la Central Mercedita, probar que no había sobrante de las liquidaciones, y notificar de ello a los deudores Clavell e Irizarry para entonces ejercer su derecho de cobro. El lenguaje de esta disposición debe interpretarse en armonía con las otras disposiciones de la escritura número 19 que aclaran que la fecha de vencimiento de los plazos es el 4 de agosto de cada año (párrafo Primero) y que *el contrato de refacción ha quedado sin efecto excepto en lo relativo a la deuda pendiente de pago* (cláusula Cuarta). Esto último necesariamente quiere decir que no tan sólo queda la deuda subsistente sino, además, *lo relativo a ella*, como lo es su amortización en plazos anuales de $3,000, más intereses y el vencimiento de éstos el 4 de agosto de cada año. Queda claro entonces que la cláusula en cuestión no tuvo el efecto de relevar a los deudores de su obligación refaccionaria para con la recurrida y, por consiguiente, de la obligación que en tal virtud tenían de asegurarse que Central Mercedita abonase

los plazos anuales de los sobrantes de las liquidaciones y si no había sobrante, de pagarlos ellos a su vencimiento el 4 de agosto de cada año. Así se hizo por Clavell en septiembre de 1954 y en agosto de 1955, pero por razones que no aparecen del récord, éste no se ocupó de cumplir esta obligación puntualmente en 1956 al extremo que el pago se realizó tardíamente mediante consignación realizada por la Central Mercedita en 7 de septiembre de este último año.

El récord no demuestra pacto expreso alguno que declare extinguida la obligación de los recurrentes de pagar los plazos en 4 de agosto de cada año ni existe acuerdo alguno que sea en todo punto incompatible con esa obligación. No ha habido, pues, ni novación ni las modificaciones alegadas. *Banco de Puerto Rico* v. *Arguinzoni*, 53 D.P.R. 167 (1938). Cfr. *Dávila* v. *Torres*, 58 D.P.R. 881 (1941); *Bonet* v. *Hernáiz Rozas*, 49 D.P.R. 101 (1935); *Iglesias* v. *Jefferson Standard Life Insurance Co.*, 45 D.P.R. 711 (1933).

■ 3) El séptimo error alegado en el sentido de que no procedía condenar a los recurrentes al pago de $3,000 de honorarios de abogado, es frívolo pues dicho pago por los deudores originales se pactó como penalidad en la cláusula Decimoséptima de la escritura número 67 para el caso que al dejarse de pagar uno de los plazos de $3,000 de la referida deuda refaccionaria, y tenerse por vencidos todos los plazos pendientes de pago, el acreedor proceda, como lo ha hecho en este caso a exigir el pago de la deuda "por la vía que estime". Los recurrentes contrajeron, reconocieron y asumieron dicho pacto en la forma previamente relacionada. El mismo quedó subsistente como "relativo a la deuda" al dejarse sin efecto el contrato de refacción por las disposiciones de la cláusula Cuarta de la escritura número 19.

■ 4) El octavo error alegado consistente en ordenar el tribunal de instancia que la recurrida tomase posesión de las fincas y sus plantaciones envueltas en la transacción objeto de la controversia en este caso es también frívolo. La cláusula de la escritura número 67 que autoriza tal acción

es parte esencial del gravamen preferente sobre las cañas convenido en dicha escritura, y, en lugar de quedar sin efecto, expresamente se convino que continuase en vigor por la disposición de la referida cláusula Cuarta de la escritura número 19. Además, en la vista del caso ante nos se admitió que la deuda que motivó esta acción había sido saldada en su totalidad.

*Por las razones indicadas se confirmará la sentencia dictada por el Tribunal Superior, Sala de Ponce, en 17 de abril de 1959.*